FILED
2011 Feb-18  PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DISTRICT

| | | |
|---|---|---|
| **AMY COCHRAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **vs.** | ) | **2:10-CV-03522-SLB** |
| | ) | |
| **FIVE POINTS TEMPORARIES,** | ) | |
| **LLC, d/b/a FIVE POINTS** | ) | |
| **STAFFING, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MOTION TO DISQUALIFY COUNSEL

---

**COME NOW** Five Points Temporaries, LLC, ("Five Points") David McNeil and Tracy McNeil and file their Motion to Disqualify Counsel. As grounds therefor, Defendants state as follows:

### I.  STANDARD OF REVIEW

The district court's interpretations and application on rules of professional conduct involves mixed questions of law and fact. See Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1558 (11th Cir. 1997). The party bringing the Motion to Disqualify bears the burden of proving the grounds for disqualification. See In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003); see also Ex parte Regions Bank, 914 So. 2d 843, 847-48 (Ala. 2005). "Because a party is presumptively

entitled to counsel of his choice, that right may be overwritten only if 'compelling reasons' exists." See id.  An order to disqualify "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly." See Morton v. Tallahassee Memorial Hospital, 689 F.2d 938, 941 n.4 (11th Cir. 1982).

## II.   FACTS

1.     Tracy and David McNeil are husband and wife and Mr. McNeil owns Five Points. (See Affidavit of David McNeil, attached as Exhibit A).

2.     Five Points is a staffing company that supplies employees to many businesses to supplement their staffing needs.  Five Points' offices are located in Birmingham, Alabama and Tuscaloosa, Alabama.  Five Points' Pell City, Alabama office closed on March 31, 2009. (See Exhibit A).

3.     Amy Russo Cochran worked for Five Points initially from December 28, 2002, through February 10, 2006.  Ms. Cochran voluntarily terminated her employment on February 10, 2006.  (See Exhibit A).

4.     After Ms. Cochran was discharged from a competitor ("Lyons HR"), Five Points offered Ms. Cochran a position on May 20, 2008 and she started work at Five Points on May 21, 2008, as a Sales Representative.  (See Exhibit A).

5.     On June 27, 2008, a Complaint was filed in Jefferson County, Alabama on behalf of Lyons HR against Ms. Cochran and Five Points for violation

of a non-compete and non-solicitation agreement. (A copy of the Complaint is attached as Exhibit B).

6.     The Complaint alleged Ms. Cochran breached the terms of the non-compete and non-solicitation agreement by "directly soliciting business from Lyons' customers." (See Exhibit B, ¶ 12).

7.     The Complaint also alleged Ms. Cochran breached the terms of the agreement by "disclosing confidential information." (See Exhibit B, ¶ 13).

8.     Lyons HR contended Ms. Cochran solicited Lyons HR employees to become Five Points employees. (See Exhibit B, ¶ 14).

9.     Five Points agreed to assist Ms. Cochran on her legal defense to the extent practical.  The Frederick Firm (specifically Brandi Frederick) was hired to represent Ms. Cochran, and Five Points initially agreed to pay for The Frederick Firms' services. (See Exhibit A).

10.    On August 13, 2008, David McNeil signed an engagement letter[1] from Ms. Frederick which not only explained the billing structure, but also noted a reduced retainer requirement because it was expected that the case would be dismissed quickly. (See Exhibit A).

11.    Five Points retained the right to alter this arrangement if the case did not proceed as expected. (See Exhibit A).

---

[1] If the Court would like to review the engagement letter and the joint defense agreement, counsel will file them for *in camera* review.

12.     Counsel for Five Points and The Frederick Firm entered into a joint defense agreement as they had common interests – defending Five Points and Amy Cochran. (See Exhibit A).

13.     On October 15, 2008, Ms. Cochran countersued Lyons HR and alleged she had been the victim of sexual harassment.  She also alleged violations of the Family Medical Leave Act and Equal Pay Act.  She included state law claims of invasion of privacy, battery and outrage. (See Answer and Counterclaim, attached as Exhibit C).

14.     After finding out that The Frederick Firm filed a countersuit on behalf of Ms. Cochran against Lyons HR, David McNeil began to consider ending the arrangement with The Frederick Firm. (See Exhibit A).

15.     Mr. McNeil did not feel that Five Points had an obligation to fund a countersuit in which Five Points was not involved. (See Exhibit A).

16.     After Mr. McNeil received subsequent invoices from The Frederick Firm (including invoices for work on the countersuit by Ms. Cochran against Lyons HR), he agreed to pay the outstanding invoice, but decided not to replenish the retainer until an estimate was done on future costs of continuing the case. (See Exhibit A).

17.     When he received an estimate on the future costs of the litigation, Mr. McNeil determined that funding Ms. Cochran's defense and countersuit was too expensive. (See Exhibit A).

18.     Mr. McNeil instructed The Frederick Firm that he would not be responsible for any additional work done on behalf of Ms. Cochran.  (See Exhibit A).

19.     Mr. McNeil continued to receive invoices for work performed on behalf of Ms. Cochran.  (See Exhibit A).

20.     Mr. McNeil did not pay The Frederick Firm's invoices for work performed after he instructed them that he would not be responsible for additional work. (See Exhibit A).

21.     The invoices submitted by The Frederick Firm to Five Points detailed the work performed on behalf of Ms. Cochran.   (See Exhibit A).

22.     Ms. Sales was terminated on March 16, 2010 for falsifying sales records.  (See Exhibit A).

## III.   <u>LEGAL ANALYSIS</u>

As noted by the Eleventh Circuit Court of Appeals, motions to disqualify are governed by two sources of authority:  the local rules of the court and federal common law. <u>See</u> <u>Hermann v. Gutterguard, Inc.</u>, 199 Fed. Appx. 745, 752 (11th Cir. 2006).  Both sources govern attorney's professional conduct and motions to

disqualify are substantive motions affecting the rights of the parties.  See Hermann, 199 Fed. Appx. at 752 (citations omitted).

A district court cannot base its disqualification on a "general inherent power to admit and suspend attorneys."  See id.  Instead, the court must clearly identify a specific rule of professional conduct and must conclude that the attorney violated that rule.  See id. (citation omitted).

**A.    Rules 1.7 and 1.9 of the Alabama Rules of Professional Conduct prohibit counsels from representing clients with interests that are directly adverse without consent of the clients.**

Rule 1.7 of the Alabama Rules of Professional Conduct states:

Conflict of Interest:  General Rule.
(a)    A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
    (1)    the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
    (2)    each client consents after consultation.

See Alabama Rules of Professional Conduct, Rule 1.7.

As noted in the comments to Rule 1.7, "loyalty is an essential element in the lawyer's relationship to a client."  See Comments, Alabama Rules of Professional Conduct, Rule 1.7.

Rule 1.9 specifically prohibits conflicts of interest which arise between the lawyer and the former client.  See Alabama Rules of Professional Conduct, Rule 1.9.  Rule 1.9 states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or
>
> (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

See Alabama Rules of Professional Conduct, Rule 1.9.

As noted by the Alabama Supreme Court, a former client seeking disqualification under Rule 1.9 must demonstrate: 1) an attorney-client relationship existed with the attorneys it seeks to disqualify and 2) the attorneys to be disqualified represented the former client in a substantially related matter. See Ex parte Regions Bank, 914 So. 2d at 847-848 (citing Ex parte Tiffin, 879 So. 2d 1160, 1164-65 (Ala. 2003)).

### 1)   An attorney-client relationship existed between Five Points and the Frederick firm.

As noted in the Complaint, Ms. Cochran's former employer, Lyons HR, filed a lawsuit ("the Lyons HR lawsuit") against Ms. Cochran and Five Points for alleged violations of Ms. Cochran's non-compete agreement. (See Doc. 1, p. 8, ¶ 48). Five Points Temporaries retained The Frederick Firm, specifically Barry and

Brandi Frederick, to defend Amy Cochran in the Lyons HR lawsuit. (See Doc. 1, p. 8, ¶¶ 49, 50; see also Affidavit of David McNeil, Exhibit A). David McNeil signed a retention letter with The Frederick Firm. In the Lyons HR suit, Five Points was represented by Tanner and Guin. (See Answer in Lyons HR lawsuit, attached as Exhibit D). Importantly, counsel for Five Points and Amy Cochran, namely the Fredericks, entered into a joint defense agreement for the purpose of providing a common defense for Five Points and Amy Cochran against the claims made by Lyons HR. (See Affidavit of David McNeil, Exhibit A). As noted in Ms. Cochran's Complaint, the Defendants paid some of the attorneys' fees and expenses incurred in the defense of Ms. Cochran in the Lyons HR suit. (See Doc. 1, p. 10, ¶ 61). The invoices submitted by The Frederick Firm detailed their strategy, work performed and other privileged matters as they defended Ms. Cochran. (See Affidavit of David McNeil, Exhibit A). There can be no doubt an attorney-client privilege existed between the Defendants and The Frederick Firm.

> **2)    The Cochran Complaint filed by The Frederick Firm is substantially related to the matter for which The Frederick Firm previously represented Five Points Temporaries.**

"The substantial relationship test is the keystone of the law on conflicts of interests involving former clients." See Ex parte Regions Bank, 914 So. 2d 843, 848 (Ala. 2005). When determining whether a substantial relationship exists courts should consider "the similarity between the factual situations, the legal

issues posed, and the nature and extent of the attorney's involvement to see if information from the prior representation is material to the new representation." See Ex parte Regions Bank, 914 So. 2d at 848.  The supreme court opined "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a *changing of sides* in the matter in question."  See id. at 848-49(emphasis in original)(quoting Comments to Alabama Rules of Professional Conduct, Rule 1.9).

A substantial relationship exists between the Frederick Firm's representation of Five Points in the Lyons HR lawsuit and the present case.  The factual situations between the Lyons HR case and this case are similar.  In the Lyons HR Complaint, Lyons HR alleged Ms. Cochran solicited its clients, solicited its employees and provided Lyons HR confidential information to Five Points. (See Exhibit B).  The Lyons HR suit turned on Ms. Cochran's employment with Five Points Temporaries – its clients, its processes and its employees in comparison with Lyons HR's.  Ms. Cochran's duties with Five Points and her execution of those duties were at issue.  Similarly, in this discrimination and retaliation case, Ms. Cochran's employment with Five Points is at issue – namely her duties and the execution of those duties.

Further, it cannot be ignored The Frederick Firm and its members will be witnesses in this case.  Ms. Cochran has alleged she had a business relationship with The Frederick Firm and the Defendants intentionally interfered with that

relationship. The members of The Frederick Firm will be called to testify how the relationship was damaged. They will be called to testify about the termination of their relationship with Five Points and the alleged fraudulent failure to pay the invoices *from the Lyons HR lawsuit*. Members of the firm could be witnesses for the defense to explain how they were retained by Five Points to defend their employee in the Lyons HR lawsuit – so Amy Cochran could remain the employee of Five Points.[2]

In upholding the disqualification of an attorney, the Eleventh Circuit noted the attorney's introduction of evidence of the former lawsuit "did not reflect well on [the attorney's] respect for his ethical obligations or his credibility." See Hermann, 199 Fed. Appx. at 755. Similar to the Hermann case, Ms. Cochran's state law claims in this case specifically reference the Lyons HR suit. For example, the intentional interference with business relations claim contends Five Points interfered with the attorney-client relationship between Ms. Cochran and The Frederick Firm *formed in the Lyons HR suit*. Conveniently, the Complaint ignores

---

[2] The Eleventh Circuit has held a negative inference of discrimination exists when the same decision-makers who are accused of discriminatory bias either hired or promoted the plaintiff. See Williams v. Vitro Services Corp., 144 F.3d 1438, 1443 (11th Cir. 1998); see also Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1318 (4th Cir. 1993)(holding when same decision-maker both hires, promotes and terminates the plaintiff, an inference of nondiscrimination arises). David McNeil not only hired Ms. Cochran but he also hired The Frederick Firm to defend her in the Lyons HR lawsuit. (See Exhibit A). David McNeil terminated Ms. Cochran – yet she contends he discriminated against her on the basis of her race and color. A negative inference of discrimination exists.

the existence of the retention agreement and the joint defense agreement.  (See Exhibit A).  The fraud claims relate to conversations between Tracy McNeil and The Frederick Firm about the enforceability of the non-compete – and yet The Frederick Firm continues to deny the existence of an attorney client privilege.  The remaining two fraud counts complain about the failure to pay for legal fees *from the Lyons HR lawsuit.* These "fraud" claims will center on the terms of which are detailed in the retention letter between Five Points and The Frederick Firm.  In this case, just as in the <u>Hermann</u> case, The Frederick Firm has used and will use as evidence matters from the Lyons HR lawsuit.

In addition, the Lyons HR lawsuit and this lawsuit are substantially related as The Frederick Firm was intimately involved in the Lyons HR suit.  <u>Cf.</u> <u>Ex parte Central States Health and Life Co.</u>, 594 So. 2d 80 (Ala. 1992)(refusing disqualification as attorney was only minimally involved and thus could not have acquired confidential information in prior suit).  The Frederick Firm represented Ms. Cochran and filed a counterclaim against Lyons HR on her behalf.  In total, they filed at least ten pleadings in the Lyons HR case.  Likewise, they will be intimately involved in this action as they are the only attorneys of record for Ms. Cochran.

Importantly as to Rule 1.9(b), The Frederick Firm would have learned confidential information during their representation of Ms. Cochran in the Lyons

HR lawsuit.  As the Lyons HR Complaint included allegations about solicitation of clients - customer information would have been an issue.  To prove damages, Lyons HR would have had to demonstrate Ms. Cochran's sales to its former customers benefited Five Points.  Thus, sales information and Five Points' processes would have been disclosed to The Frederick Firm.  In this case, Ms. Cochran was terminated for fraudulently reporting sales.  The Frederick Firm could use information they learned while working on the Lyons HR lawsuit to its benefit in this case.  This is a clear case of an appearance of *changing sides* – the McNeils and Five Points hired The Frederick Firm to defend their interests and the interests of their employee and now The Frederick Firm has filed suit against the McNeils and Five Points arising out of the employment of that same employee. This Court should disqualify The Frederick Firm and its members from this case.

**B.  Neither Five Points, David McNeil nor Tracy McNeil has consented to the adverse representation of the Frederick Firm.**

As noted above, Rule 1.9 of the Alabama Rules of Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, *unless the former client consents after consultation*;

Alabama Rules of Professional Conduct, Rule 1.9(a)(emphasis added).  It is undisputed Five Points has not consented to The Frederick Firm's representation of Amy Cochran in this suit against them.

## IV.   **CONCLUSION**

The members of The Frederick Firm have ignored their clear conflict of interest in filing this lawsuit against Five Points, Tracy McNeil and David McNeil. As discussed above, the Lyons HR lawsuit is substantially related to this lawsuit. While defending Ms. Cochran, an employee of Five Points, in the Lyons HR lawsuit, the members of The Frederick Firm gained confidential information which they could use in the prosecution of this lawsuit.  Five Points did not consent to The Frederick Firm's conflict of interest.  In sum, compelling reason exists for disqualification, and thus this Court should disqualify The Frederick Firm and its members from representing Amy Cochran against Five Points.

WHEREFORE PREMISES CONSIDERED, Defendants respectfully request this Court to disqualify The Frederick Firm and its members from representing Amy Cochran in this lawsuit against Five Points Temporaries, David McNeil and Tracy McNeil as their representation constitutes a conflict of interest.

Respectfully submitted,

*s/ Jenna M. Bedsole*

Jennifer M. Bedsole (MCC107)
Attorney for Defendants,
Five Points Temporaries, LLC
d/b/a Five Points Staffing, David McNeil,
and Tracy McNeil

**OF COUNSEL:**
LLOYD, GRAY, WHITEHEAD & MONROE, P.C.
2501 20th Place South, Suite 300
Birmingham, AL 35243
(205) 967-8822 Telephone
(205) 967-2380 Facsimile

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing was served upon the following counsel of record by efiling and/or by United States Mail, with postage prepaid and properly addressed on this the 18th day of February, 2011:

Barry V. Frederick, Esq.
Brandi B. Frederick, Esq.
The Frederick Firm
5409 Trace Ridge Lane
Birmingham, Alabama 35244
(205) 739-0043 Telephone
(205) 739-0044 Facsimile
Barry@frederickfirm.net
Brandi@frederickfirm.net

*s/ Jenna M. Bedsole*
OF COUNSEL

1184546v1                                    14

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DISTRICT

| | | |
|---|---|---|
| **AMY COCHRAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **vs.** | ) | **2:10-CV-03522-SLB** |
| | ) | |
| **FIVE POINTS TEMPORARIES,** | ) | |
| **LLC, d/b/a FIVE POINTS** | ) | |
| **STAFFING, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

## AFFIDAVIT OF DAVID McNEIL

---

**STATE OF ALABAMA**          )

**COUNTY OF TUSCALOOSA**      )

Before me, the undersigned notary public, appeared David McNeil, who being by me first duly affirmed, deposes and states as follows:

1.     My name is David McNeil.  I am over the age of 19, and I possess personal knowledge of the contents of this affidavit.

2.     I am a resident of Tuscaloosa County.

3.     I am the owner of Five Points Temporaries, L.L.C. d/b/a Five Points Staffing ("Five Points").

1186623

4.     Five Points is a staffing company that supplies employees to many businesses to supplement their staffing needs. Five Points' offices are located in Birmingham, Alabama and Tuscaloosa, Alabama. Five Points' Pell City, Alabama office closed on March 31, 2009.

5.     Amy Russo Cochran worked for Five Points initially from December 28, 2002, through February 10, 2006. Ms. Cochran voluntarily terminated her employment on February 10, 2006.

6.     After Ms. Cochran was discharged from a competitor ("Lyons HR"), Five Points offered Ms. Cochran a position on May 20, 2008 and she started work at Five Points on May 21, 2008, as a Sales Representative.

7.     I was consulted and approved of her hire.

8.     On June 27, 2008, a Complaint was filed in Jefferson County, Alabama on behalf of Lyons HR against Ms. Cochran and Five Points for violation of a non-compete and non-solicitation agreement.

9.     Five Points agreed to assist Ms. Cochran on her legal defense to the extent practical. The Frederick Firm (specifically Brandi Frederick) was hired to represent Ms. Cochran, and Five Points initially agreed to pay for The Frederick Firms' services.

10.     On August 13, 2008, I signed an engagement letter from Ms. Frederick which not only explained the billing structure, but also noted a

reduced retainer requirement because it was expected that the case would be dismissed quickly.

11.    Five Points retained the right to alter this arrangement if the case did not proceed as expected.

12.    Counsel for Five Points and The Frederick Firm entered into a joint defense agreement – as we shared a common purpose – defending against the non-compete agreement and retention of Amy Cochran as an employee.

13.    After finding out that The Frederick Firm filed a countersuit on behalf of Ms. Cochran against Lyons HR, I began to consider ending the arrangement with The Frederick Firm.  I did not feel that Five Points had an obligation to fund a countersuit in which Five Points was not involved.

14.    After I received subsequent invoices from The Frederick Firm (including invoices for work on the countersuit by Ms. Cochran against Lyons HR), I agreed to pay the outstanding invoice, but decided not to replenish the retainer until an estimate was done on future costs of continuing the case.

15.    When I received an estimate on the future costs of the litigation, I determined that funding Ms. Cochran's defense and countersuit was too expensive.

16.   I instructed The Frederick Firm that I would not be responsible for any additional work done on behalf of Ms. Cochran.

17.   I continued to receive invoices for work performed on behalf of Ms. Cochran.

18.   I did not pay The Frederick Firm's invoices for work performed after I instructed that I would not be responsible for additional work.

19.   The invoices submitted by The Frederick Firm to Five Points detailed the work performed on behalf of Ms. Cochran.

20.   I never consented to waive any conflict of interest with The Frederick Firm.  As owner, I would be the only one authorized to waive any such conflict of interest on behalf of Five Points.

21.   I terminated Ms. Cochran for inconsistencies and misrepresentations made in her sales reports.

22.   I declare under penalty of perjury pursuant to the laws of the State of Alabama the foregoing is true and correct.

_____
David McNeil


FURTHER, THE AFFIANT SAITH NOT.
Sworn to and subscribed before me,
the   18th   day of   Feb          , 2011.

1186623                                          4

_Kutii M Barnes_

Notary Public

My Commission Expires: TERM EXPIRES 12-13-2011

# Exhibit B

ELECTRONICALLY FILED
2/15/2008 4:17PM
CV-2008-902069-00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

LYONS HR,
     Plaintiff,

vs.                                CASE NO: CV 2008 - _____

AMY RUSSO COCHRAN, an individual,
and FIVE POINTS TEMPORARIES
OF BIRMINGHAM, INC. d/b/a
FIVE POINTS STAFFING, a corporation,
     Defendants.

### COMPLAINT

Comes now the Plaintiff, Lyons HR ("Lyons"), an Alabama corporation, with its principal

place of business in Lauderdale County, Alabama, and states its claims against Amy Russo Cochran

("Cochran"), an individual, and Defendant, Five Points Temporaries of Birmingham, Inc. d/b/a Five

Points Staffing ("Five Points"), an Alabama company with its principal place of business in Jefferson

County, Alabama.

### PARTIES

1.     The plaintiff, Lyons, is a corporation that was doing business in Birmingham,

Jefferson County, Alabama, at all times relevant hereto.

2.     Lyons is the successor in interest to JobCenter, Inc. d/b/a "firstPRO", an Alabama

corporation also doing business in Birmingham, Alabama, at all times relevant hereto.

3.     The Defendant, Cochran, is an individual residing at 412 Linden Street, Trussville,

Alabama, 35173.  Cochran worked for Lyons previously but now works for Five Points.

4.     The Defendant, Five Points, was doing business in Jefferson County, Alabama, at

all times relevant hereto.  Five Points employed Cochran after Cochran left her employment with

Lyons.

## FACTS COMMON TO ALL COUNTS

5.     Cochran was employed by either firstPRO, JobCenter, Inc., or Lyons from February 27, 2006, to May 15, 2008.

6.     On April 7, 2006, Cochran signed the Non-Disclosure and Non-Solicitation Agreement ("Agreement") attached hereto as Exhibit "A".

7.     Lyons is a corporation doing business in Jefferson County, Alabama, and provides employees to various companies.

8.     Five Points does business in Jefferson County, Alabama, and provides employees to various companies.

9.     Five Points is a competitor of Lyons in the temporary staffing industry.

10.     In accordance with the Agreement, Cochran agreed that she would not, for a period of one year after the date of the termination of her employment with Lyons, directly or indirectly solicit or attempt to solicit any business from any of employer's customers with which Cochran had material contact. In addition, Cochran agreed not to use, disclose or permit any person to obtain any confidential information of Lyons.  Also, Cochran agreed not to solicit, induce or attempt to influence any employee of Lyons to leave their employment.

## COUNT ONE - BREACH OF CONTRACT

11.     Lyons restates and realleges for all purposes each and every allegation of this Complaint as if set forth herein.

12.     Cochran breached the terms of the aforementioned Agreement by seeking and obtaining employment with Five Points and directly soliciting business from Lyons' customers.

13.     Cochran breached the terms of the Agreement by disclosing confidential information to Five Points.

14.     Cochran breached the terms of the above-referenced matter Agreement by soliciting employee(s) of Lyons to become employees of Five Points.

15.     As a consequence of Cochran's breach of said Agreement, Lyons has been damaged.

16.     Cochran and Lyons agreed that a breach of the Agreement could cause irreparable harm and that any court of competent jurisdiction should immediately enjoin any breach of this Agreement.

17.     Cochran's breach of the Agreement is causing and will continue to cause irreparable harm to Lyons.

18.     Wherefore, Lyons prays that the Court enter judgment in favor of Lyons and against Cochran in an amount to be determined by the Court, together with interest and costs.  Further, Lyons prays that the Court will enter judgment in favor of Lyons and against Cochran and grant any and all other appropriate remedies at law and equity, including an injunction, specific performance, and other equitable relief to prevent Cochran's violation of her obligations under the Agreement. Among other things, Lyons prays this Court will enter a preliminary and permanent injunction enjoining Cochran from: (1) using, disclosing, or permitting any person to obtain any confidential information of Lyons,  and (2) directly or indirectly soliciting or attempting to solicit any business from any of Lyons' customers with which Cochran had any material contact, and (3) providing services that are competitive with those which she provided while employed with Lyons, and (4) soliciting any Lyons' employee to become employees of Five Points.  In addition, pursuant to the Agreement, the Plaintiff prays that this Court will enforce the Agreement and require Cochran to be liable to pay all costs associated with this litigation including, without limitation, all reasonable attorney's fees which Lyons incurs in enforcing this Agreement.

## COUNT TWO – INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONS

19.     Lyons restates and realleges for all purposes each and every allegation of this Complaint as if set forth herein.

20.     A contract existed and exists between Lyons and Cochran, to wit: the Agreement, attached hereto as Exhibit "A".

21.     Five Points was and is aware of the existence of the Agreement.

22.     On or about June 17, 2008, Tracy Hanephin, owner of Five Points, received a copy of the Agreement and a copy of a letter to Cochran asking her to cease and desist from violating the agreement. A copy of this letter is attached as Exhibit "B".

23.     Five Points was and is intentionally interfering with Lyons Agreement with Cochran by allowing and/or encouraging Cochran to solicit business from Lyons' customers and by obtaining from Cochran confidential information as set forth in the Agreement.

24.     As a result of Five Points' intentional interference with the Agreement, Lyons has been damaged.

25.     Five Points' interference was and is carried out wantonly, spitefully, and/or maliciously.

26.     Lyons has suffered and continues to suffer irreparable harm as a result of Five Points' conduct.

27.     Wherefore, Lyons prays that the Court will enter judgment in favor of Lyons and against Five Points for compensatory and punitive damages in an amount to be determined by the Court, together with interest and costs. Further, Lyons prays that the Court will enter judgment in favor of Lyons and against Five Points and grant any and all other appropriate remedies at law and equity, including an injunction, specific performance, and other equitable relief to, *inter alia*: (1)

prevent Cochran's violation of her obligations under the Agreement, and (2) prevent Five Points' continued interference with the Agreement.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court to assume jurisdiction of this action and award it the following relief:

Declaratory judgments; and

Specific performance of the Agreement; and

Orders preventing Cochran from continuing to breach her contractual obligations; and

Orders enjoining Cochran from directly or indirectly soliciting or attempting to solicit any business from any of Lyons' customers with which Cochran had material contact; and

Orders preventing Cochran from providing services that are competitive with those Cochran provided while employed with Lyons; and

Orders enjoining Cochran from providing confidential information to Five Points as defined in the Agreement; and

Orders preventing Cochran from soliciting any employee(s) of Lyons to become employees of Five Points; and

Such monetary and other damages from the Defendants as may be established at trial, and such further and different relief as this Court deems appropriate; and

Other appropriate declaratory judgments and orders directing the specific performance of the Agreement; and

Judgment against Defendants and in favor of Plaintiff in amounts to be determine by the Court, interest and costs; and

Punitive Damages; and

Attorney's fees and Costs; and

All other appropriate declaratory relief, injunctive relief, compensatory damages, interest, expenses, and costs as justice may require; and

Such further or different relief as justice may require; and

Such other legal and equitable relief as this Court deems appropriate.

This the 27th day of June, 2008.

<u>s/Grant A. Wright</u>
GRANT A. WRIGHT (WRI025)
Attorney for Plaintiff

<u>OF COUNSEL</u>

ASHE & WRIGHT, P. C.
105 West Second Street
Tuscumbia, Alabama  35674
Telephone: (256) 383-6357

**Please serve Defendants via Certified Mail at the following addresses:**

Ms. Amy Russo Cochran
412 Linden Street
Trussville, Alabama 35173

Five Points Temporaries of Birmingham, Inc.
d/b/a Five Points Staffing
Attn: Tracy Hanephin
1101-A 18th Street South
Birmingham; Alabama 35205

# EXHIBIT A

## NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT

NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT ("Agreement") made and entered as of April 7, 2006, by and between JobCenter, Inc., d/b/a/ "firstPRO" an Alabama Corporation, hereinafter referred to as Employer, and _Amy R. Cochran_, hereinafter referred to as Employee.

WHEREAS, Employer desires to retain the services of Employee; and

WHEREAS, Employer and Employee desire to enter into this Agreement to set forth the terms and conditions under which Employer may disclose confidential and proprietary information about its business to Employee during the course of Employee's employment with Employer;

NOW, THEREFORE, in consideration of Employee's employment or continuing employment with Employer and other valuable consideration, including training Employee in Employer's successful business operations and procedures, the receipt and sufficiency of which are hereby acknowledged, Employee and Employer agree as follows:

1.  Employee recognizes that Employee's position with Employer requires considerable responsibility and trust.  Relying upon Employee's ethical responsibility and undivided loyalty, Employer has entrusted and will entrust Employee with highly sensitive, confidential, restricted, and proprietary information involving Confidential Information (as defined below).  Employee understands that Employee is responsible for protecting and preserving Employer's proprietary rights.

2.  For purposes of this Agreement, the following definitions apply:

    (A)  "Confidential Information" means any data or information that is important to Employer, competitively sensitive, and not generally known by the public.  To the extent consistent with the foregoing definition, Confidential Information includes (without limitation):

        (i)  the sales records, profit and performance reports, pricing manuals, sales manuals, training manuals, selling and pricing procedures, and financing methods of Employer;

        (ii)  customer lists, the special demands of particular customers, and the current and anticipated requirements of customers for Employer's services;

        (iii)  the marketing strategies, methods of recruitment, and internal financial statements and projections of Employer;

    (iv)    lists of candidates and potential candidates for placement recruited by Employer, including but not limited to those recruited by Employee personally.

    (B)    This covenant is not intended to and does not limit in any way Employee's duties and obligations to Employer under statutory or case law not to disclose or make personal use of such information, or any trade secret information of Employer.

3.    During Employee's employment with Employer and for two (2) years after Employee's employment termination for whatever reason, Employee is forbidden from using, disclosing, or permitting any person to obtain any Confidential Information of Employer (whether or not the Confidential Information is in written or tangible form).

4.    Employee covenants and agrees that (i) for a period of one year following the termination of Employee's employment for whatever reason, (ii) Employee shall not directly or indirectly solicit or attempt to solicit any business from any of Employer's customers with which Employee had material contact (i.e., dealt with, worked with, supervised dealings with, or obtained confidential information concerning) during the last two years of Employee's employment with Employer, (iii) for purposes of providing products or services that are competitive with those which Employee provided while with Employer.

5.    Employee covenants and agrees that for a period of one (1) year after Employee's termination of employment for whatever reason, Employee will not solicit, induce, or attempt to influence any employee or independent contractor of Employer to leave their employment or independent contractor relationship with Employer. For purposes of this section, an individual shall be considered to be an employee or independent contractor of Employer if such individual is employed by or was an independent contractor of Employer at the time of Employee's termination of employment or one (1) year prior to such termination of employment.

6.    Upon Employer's request, and in any event, upon the termination of Employee's employment, Employee must surrender to Employer all memoranda, notes, records, manuals, and other documents pertaining to Employer's business or Employee's specific duties for Employer (including all copies of such materials). Employee must also return to Employer and leave at its disposal all materials involving any Trade Secrets and Confidential Information of Employer. This provision is intended to apply to all materials made or compiled by Employee, as well as all materials furnished to Employee by anyone else, in connection with his employment.

7.    Any claim Employee may have against Employer shall not constitute a defense to enforcement of this Agreement. The covenants in this Agreement shall survive termination of Employee's employment, regardless of who causes the termination and under what circumstances.

8.    Irreparable harm should be presumed if Employee breaches any covenant in this Agreement. The faithful observance of all covenants in this Agreement is an essential condition of Employee's employment, and Employer is depending upon absolute

compliance. Damages would be very difficult to ascertain if Employee breached any covenant in this Agreement. This Agreement is intended to protect the proprietary rights of Employer in many important ways. Even the threat of any misuse of the technology and Confidential Information of Employer would be extremely harmful, since the foregoing are essential to Employer's business. In light of these facts, Employee agrees that any court of competent jurisdiction should immediately enjoin any breach of this Agreement, upon Employer's request, and Employee specifically releases Employer from the requirement to post any bond in connection with temporary or interlocutory injunctive relief to the extent permitted by law.

9.     Employee shall be liable to pay all costs, including without limitation, reasonable attorneys' fees, which Employer may incur in enforcing, to any extent, this Agreement, whether or not litigation is commenced and including litigation of any appeal taken or defended by Employer in an action to enforce this Agreement.

10.    This Agreement constitutes the entire Agreement between Employee and Employer with respect to the subject matter hereof. This Agreement supercedes any and all prior negotiation, understandings and agreements of the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by a writing, signed by all parties hereto.

11.    Failure to insist upon strict compliance with any of the terms or conditions of this Agreement shall not constitute a waiver of same nor preclude either party from insisting upon strict compliance in the future.

12.    It is the intent of the parties that this Agreement shall be considered severable in part and in whole, and that if any covenant shall be determined to be unenforceable in any part, that portion of the Agreement shall be severed or modified by the Court so as to permit enforcement of the Agreement to the extent reasonable. It is agreed by the parties that the obligations set forth herein shall be considered to be independent of any other obligations between the parties, and the existence of any other claim or defense shall not affect the enforceability of this Agreement or the remedies hereunder. *This Agreement should be construed in accordance with the laws of Georgia.*

13.    Employee represents and agrees that Employee fully understands Employee's right to discuss all aspects of this Agreement with Employee's private attorney; that to the extent Employee desired, Employee availed him/herself of this right; that Employee has carefully read and fully understands the provisions of this Agreement; that Employee is competent to execute this Agreement; that Employee's decision to execute this Agreement has not been obtained by any duress; that Employee freely and voluntarily enters into this Agreement; and that Employee has read this document in its entirety and fully understands the meaning, intent and consequences of this Agreement.

_Amy R. Cochran_

Employee

_4-8-06_

Date

_Bill Mour_

JobCenter, Inc. d/b/a firstPRO

_4-8-06_

Date

JobCenter, Inc. d/b/a firstPRO

# EXHIBIT B

LAW OFFICES OF
# ASHE & WRIGHT, P.C.
105 WEST SECOND STREET
P. O. BOX 899
TUSCUMBIA, ALABAMA 35674

BRAXTON W. ASHE
GRANT A. WRIGHT
NICKOLAS J. STELES
KIMBERLY E. LINVILLE*
*ALSO LICENSED IN TENNESSEE

TELEPHONE
256-383-6357

TELECOPIER
256-381-4612

June 17, 2008

_**Via US Certified Mail**_

Ms. Amy Russo Cochran
412 Linden Street
Trussville, Alabama 35173

RE:    Lyons HR/Amy Russo Cochran

Dear Ms. Cochran:

This letter concerns the separation of your employment from Lyons HR, formerly d/b/a JobCenter and FirstPro.  I have enclosed another copy of the nondisclosure and non-solicitation agreement you signed on April 7, 2006.  This agreement clearly states that you will not directly or indirectly solicit or attempt to solicit any business from my client's customers.   Additionally, no confidential information is to be disclosed to any employer subsequent to your employment with Lyons HR.

We have been informed that you are currently employed with Five Points Staffing.  My client has no problem with you working for this company as long as you do not violate the terms of your nondisclosure and non-solicitation agreement.  However, we have been informed that you have already solicited and transferred several Lyons HR clients to Five Points.  In addition, we have been contacted by several other existing Lyons HR clients advising that you are calling them on behalf of Five Points Staffing seeking their business.  The aforementioned actions are in direct violation of your agreement with Lyons HR.

The purpose of this letter is to advise you of the substantial harm to Lyons HR resulting from your violation of the nondisclosure and non-solicitation agreement.  My client has instructed me to take whatever legal action necessary to enforce this agreement.  Please immediately cease and desist from any further contact with existing Lyons HR clients.

Very truly yours,

ASHE & WRIGHT, P. C.

By: _____
       GRANT A. WRIGHT

GAW:rgp
cc:    Tracy Hanifan *(via facsimile only 205-933-2718)*
        Five Points Staffing

Exhibit C

ELECTRONICALLY FILED
10/15/2008 9:33 PM
CV-2008-902069.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| LYONS HR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMY RUSSO COCHRAN and | ) |
| FIVE POINTS TEMPORARIES | ) |
| OF BIRMINGHAM, INC. d/b/a | ) |
| FIVE POINTS STAFFING, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| AMY RUSSO COCHRAN, | ) |
| | ) |
| Counterclaim Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| LYONS HR, a company, and | ) |
| BILL LYONS, JR., an individual, | ) |
| | ) |
| Counterclaim Defendants. | ) |

---

## ANSWER AND COUNTERCLAIMS OF AMY RUSSO COCHRAN

---

### ANSWER

Defendant Amy Russo Cochran ("Cochran") answers the Complaint as follows:

1.      Cochran lacks information sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies same.

2.      Cochran lacks information sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies same.

1

3.      Cochran admits she is an individual who previously worked for Lyons but now works for Five Points.   Except as explicitly admitted, Cochran denies the allegations in paragraph 3.

4.      Cochran admits she was employed by Five Points after Lyons terminated her employment.   Cochran admits Five Points does business in Jefferson County.   Except as explicitly admitted, Cochran lacks information sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies same.

5.      Admitted.

6.      Cochran admits she signed the document attached as Exhibit A to the Complaint. Except as explicitly admitted, Cochran denies the allegations in paragraph 6.

7.      Cochran lacks information sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies same.

8.      Admitted.

9.      Admitted.

10.     Denied.

**COUNT ONE**

11.     Cochran reasserts her answers to all other allegations.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

2

18.   Denied.  Further, Cochran denies Plaintiff is entitled to any relief.

<b><u>COUNT TWO</u></b>

19.   Cochran reasserts her answers to all other allegations.

20.   Denied.

21.   Denied.

22.   Cochran admits a letter purportedly delivered to Tracy Hanephin is attached as Exhibit B to the Complaint.  Except as explicitly admitted, the allegations in paragraph 22 are denied.

23.   Denied.

24.   Denied.

25.   Denied.

26.   Denied.

27.   Denied.  Further, Cochran denies Plaintiff is entitled to any relief.

<b><u>PRAYER FOR RELIEF</u></b>

Cochran denies Plaintiff is entitled to any of the relief requested.


In further defense, Defendant Amy Russo Cochran states:

<b><u>FIRST DEFENSE</u></b>

Plaintiff's claims for equitable relief are barred by its unclean hands.

<b><u>SECOND DEFENSE</u></b>

Plaintiff's claims are barred by the doctrine of *in pari delicto*.

<b><u>THIRD DEFENSE</u></b>

Plaintiff's claims are barred by the lack of and failure of consideration.

3

## FOURTH DEFENSE

Plaintiff's claims are barred by its lack of and failure of performance and its breach of contract.

## FIFTH DEFENSE

The contract at issue was terminable at will as to State law and has been terminated.

## SIXTH DEFENSE

The contract at issue is void under the doctrine of unconscionability.

## SEVENTH DEFENSE

Defendant is entitled to a rescission.

## EIGHTH DEFENSE

The contract at issue is void due to duress.

## NINTH DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and release.

## TENTH DEFENSE

The contract at issue is void *ab initio*.

## ELEVENTH DEFENSE

Plaintiff's claims are barred by estoppel.

## TWELVTH DEFENSE

The contract at issue is void due to fraud.

## THIRTEENTH DEFENSE

The contract at issue is void due to fraud in the inducement.

## FOURTEENTH DEFENSE

The contract at issue is void for absence of mutuality.

4

## FIFTEENTH DEFENSE

Plaintiff's claims are barred because the contract at issue is avoidable due to changed circumstances.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred by laches.

## SEVENTEENTH DEFENSE

The purported liquidated damages are an unenforceable penalty.

## EIGHTEENTH DEFENSE

Plaintiff's claims fail to state a claim upon which relief can be granted.

## NINETEENTH DEFENSE

The imposition of punitive damages under State law would violate the Fourth, Fifth, Sixth, and/or Fourteenth Amendments to the United States Constitution and analogous provisions of the Constitution of the State of Alabama, because (a) the standard of liability for punitive damages is inadequate, unduly vague and subjective, permitting random, arbitrary, capricious, excessive, and/or disproportionate punishment that serves no legitimate governmental interests; (b) there is an absence of procedural safeguards accorded to defendants in criminal proceedings, including a reasonable doubt standard of proof; and (c) there are inadequate standards and procedures for reviewing awards of punitive damages.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Amy Russo Cochran ("Cochran") asserts the following counterclaims against Plaintiff/Counterclaim Defendant Lyons HR ("the Company") and Defendant Bill Lyons, Jr. ("Bill Lyons"):

5

1.     Cochran is an adult resident of Alabama.

2.     Bill Lyons is an adult resident of Alabama.

3.     Bill Lyons is the President of the Company.

4.     Cochran was employed by the Company at all times relevant to the counterclaims stated herein.

5.     Cochran worked as a sales representative for the Company until the Company terminated her employment on May 15, 2008.

6.     The Company is an "employer" under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).

7.     During Cochran's employment with the Company, Cochran was repeatedly told by her supervisors that Cochran should go after clients of Five Points because the Company wanted to put Five Points out of business.

8.     In 2007, at a time when the Company believed it was going to lose one of its clients, Cochran was told she may have to "take one for the team," meaning providing sexual favors to the client.

9.     Cochran was shocked and appalled at the suggestion and informed the Company that she would not do anything illegal or immoral to keep a client.

10.    In December of 2007, at the Company's Christmas party, Bill Lyons grabbed Cochran's right buttock.

11.    After Cochran was discharged, Bill Lyons contacted the representative of one of Cochran's clients at the Company and insinuated that the client representative and Cochran were having sexual relations, and that was shy that client left the Company.

12.    In November, 2007, Cochran received a positive performance evaluation.

6

13.  The Company failed to provide Cochran with notice of her rights and obligations under the FMLA.

14.  In February, 2008, Cochran's eleven year old son was involved in an auto accident.

15.  At the time of her son's injury, Cochran had worked for 12 months for the Company and had worked at least 1250 hours during the prior 12 months of her employment with the Company.

16.  Cochran's son was injured in the auto accident and that injury qualified as a "serious health condition" a s that term is defined by the FMLA.

17.  Cochran notified the Company of her son's "serious health condition" as that phrase is defined in the FMLA, 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

18.  Cochran notified the Company that she needed time off from work to care for her 11 year old son.

19.  The Company did not request that Cochran provide medical certification for the requested time off.

20.  The Company did not inform Cochran of her rights or obligations under the FMLA related to the time off she requested to care for her son.

21.  Cochran took off of work for one week to care for her injured son.

22.  The week after Cochran returned to work from caring for her son, Cochran was bitten by a Brown Recluse spider on her leg.

23.  Cochran sought medical treatment for the spider bite and was required to return to her doctor for subsequent visits daily for several days until Cochran was referred to a surgeon for treatment related to the spider bite.

7

24.     The spider bite was a "serious health condition" as that phrase is defined by the FMLA, 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

25.     Cochran notified the Company that she needed time off from work for her serious health condition.

26.     The Company did not request that Cochran provide medical certification for the requested time off.

27.     The Company did not inform Cochran of her rights or obligations under the FMLA related to the time off she requested to obtain treatment for her serious health condition.

28.     Cochran was required to undergo surgery for the spider bite.

29.     After the surgery, Cochran was prescribed narcotic pain medication to reduce her pain resulting from the operation.

30.     The narcotic pain medication affected Cochran's ability to drive.

31.     Cochran notified the Company that she was on pain medication that affected her ability to drive.

32.     Despite Cochran's notice to the Company about her driving restrictions, the Company demanded that Cochran drive to Florence, Alabama and would not allow Cochran to ride with another co-employee.

33.     Cochran was unable to drive herself to Florence due to the spider bite and the effects of the medication she was prescribed for it, all of which was a "serious health condition" as that phrase is defined in the FMLA, 29 U.S.C. § .2611(11) and 29 C.F.R. § 825.114.

34.     Becky Houbregs, the Company's Vice President of Sales/Marketing told Cochran that Cochran and her doctor overreacted to the spider bite.

8

35.     Becky Houbregs also told Cochran that she could not return to work until she went through sales training.

36.     Upon Cochran's return to work, Cochran learned that a white male, Thomas Downing, who previously worked in recruiting, had been promoted to a position that required equal work as that performed by Cochran on a job the performance of which required equal skill, effort, and responsibility, and was performed under similar working conditions as Cochran's job, within the meaning of those words in the EPA, 29 U.S.C. § 206(d).

37.     When Mr. Downing was promoted to the job described in the paragraph above, he was paid greater salary and benefits than Cochran.

38.     Thomas Downing had less experience in sales than Cochran.

39.     Thomas Downing had been with the Company less time than Cochran at the time Downing was promoted to sales.

40.     Cochran also learned that Mr. Downing had been given a company car to drive; Cochran was not given that benefit.

41.     Upon Cochran's return to work, Cochran was required to go through training for the position she had been performing successfully for years prior to her time off.

42.     Shortly after Cochran's return to work, Cochran was taken off several accounts she had brought to the Company and/or accounts on which she had been working successfully prior to her time off.

43.     Cochran learned that the accounts she had been handling prior to her time off were given to Thomas Downing.

44.     Shortly after Cochran's return to work, Cochran's dependent child's health insurance was cancelled.

9

45.    On May 15, 2008, the Company fired Cochran.

## COUNT ONE – INVASION OF PRIVACY

46.    Cochran reasserts all allegations set forth in these counterclaims.

47.    The Company and Bill Lyons invaded Cochran's privacy.

48.    The Company's and Bill Lyons' invasions of Cochran's privacy proximately caused damages to Cochran, including without limitation mental anguish and emotional distress.

WHEREFORE Cochran demands judgment against Bill Lyons and the Company, separately and severally, in the amounts of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in Punitive Damages, plus costs.

## COUNT TWO - BATTERY

49.    Cochran reasserts all allegations set forth in these counterclaims.

50.    Bill Lyons battered Cochran.

51.    Bill Lyons' battery of Cochran proximately caused damages to Cochran, including without limitation mental anguish and emotional distress.

WHEREFORE Cochran demands judgment against Bill Lyons and the Company, separately and severally, in the amounts of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in Punitive Damages, plus costs.

## COUNT THREE - OUTRAGE

52.    Cochran reasserts all allegations set forth in these counterclaims.

53.     The Company's and Bill Lyons' sexual harassing conduct was egregious and went far beyond the realm of human decency and should not be tolerated in a civilized society.

54.     The Company and Bill Lyons intentionally inflicted severe emotional distress on Plaintiff, and thereby are guilty of the tort of outrage.

55.     As a proximate cause of the Company's and Bill Lyons' conduct as alleged above, Cochran suffered severe emotional distress and humiliation, just as such conduct was intentionally designed to cause, and Cochran further suffered the loss of her livelihood and concomitantly lost wages.

WHEREFORE Cochran demands judgment against the Company and Bill Lyons, separately and severally, in the amounts of One Million Dollars ($1,000,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in Punitive Damages, plus costs.

## COUNT FOUR – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

56.     Cochran reasserts all allegations set forth in these counterclaims.

57.     The Company violated the FMLA by failing to provide Cochran with notice of her rights and obligations under the FMLA.

58.     The Company violated the FMLA by failing and or refusing to allow Cochran to take FMLA leave to care for her son and herself.

59.     The Company retaliated against Cochran in violation of the FMLA for Cochran's taking qualifying FMLA leave to care for her son's serious health condition.

60.     The Company retaliated against Cochran in violation of the FMLA for Cochran's taking qualifying FMLA leave to care for her own serious health condition.

11

61.     The Company discharged Cochran in violation of the FMLA for Cochran's taking qualifying FMLA leave to care for her son's serious health condition and her own serious health condition.

62.     The Company's violation of Cochran's rights under the FMLA was willful.

63.     The Company's violation of FMLA proximately caused Cochran to suffer lost wages, benefits and leave time to which she was lawfully entitled to care for her son and herself.

WHEREFORE, Cochran demands judgment against the Company for lost wages, benefits, compensatory and liquidated damages, front pay in lieu of reinstatement, attorneys' fees, and costs.

## COUNT FIVE – VIOLATION OF THE EQUAL PAY ACT

64.     Cochran reasserts all allegations set forth in these counterclaims.

65.     The Company violated the Equal Pay Act by paying wages and benefits to Cochran at a rate less than the rate at which the Company paid wages to employees of the opposite sex, specifically Thomas Downing, for equal work on a job the performance of which require equal skill, effort, and responsibility, and which was performed under similar working conditions.

66.     The Company's violation of the Equal Pay Act proximately caused Cochran to suffer lost wages, and benefits.

WHEREFORE, Cochran demands judgment against the Company for lost wages, benefits, compensatory and liquidated damages, attorneys' fees, and costs.

### ***COCHRAN DEMANDS A TRIAL BY STRUCK JURY***

Signed this the 15th day of October, 2008.

12

_Barry V. Frederick_
Barry V. Frederick (FRE017)
Brandi B. Frederick (BRA121)
Counsel for Defendant Amy Russo

OF COUNSEL:

**THE FREDERICK FIRM**
5409 Trace Ridge Lane
Birmingham, Alabama 35244
(205) 739-0043 phone
(205) 739-0044 fax
Barry@frederickfirm.net

**SERVE DEFENDANT BILL LYONS VIA CERTIFIED MAIL AT:**

Bill Lyons, Jr.
201 North Pine Street, Suite 111
Florence, Alabama 35630

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served by electronically filing the same with the Alabama e-file system and via e-mail, on the following counsel this the 15th day of October, 2008.

Justin G. Williams, Esq.
Tanner & Guin LLC
Capitol Park Center
2711 University Boulevard (35401-1465)
P. O. Box 3206
Tuscaloosa, Alabama  35403-3206

Grant A. Wright
ASHE & WRIGHT, P.C.
105 West Second Street
Tuscumbia, Alabama  35674


*Barry V. Frederick*
Of Counsel

14

# Exhibit D

ELECTRONICALLY FILED
3/27/2009 1:24 PM
CV-2008-902069.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| LYONS HR, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | §    **Case Number: CV 2008-902069** |
| AMY RUSSO COCHRAN & | § |
| FIVE POINTS TEMPORARIES | § |
| OF BIRMINGHAM, INC. d/b/a | § |
| FIVE POINTS STAFFING, | § |
| | § |
| **Defendants.** | § |

---

### DEFENDANT FIVE POINTS TEMPORARIES, L.L.C.
### D/B/A FIVE POINTS STAFFING'S
### FIRST AMENDED ANSWER TO COMPLAINT AND AMENDED COMPLAINT

---

COMES NOW Defendant Five Points Temporaries, L.L.C. (named incorrectly in the Complaint and Amended Complaint as Five Points Temporaries of Birmingham, Inc.) d/b/a Five Points Staffing ("Five Points") and responds to the Complaint and the Amended Complaint of Lyons HR ("Plaintiff") as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
### (Admissions and Denials)

As to the specific allegations of the Complaint, Five Points responds to the identically numbered paragraphs as follows:

1.     Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

2.     Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

3.     Five Points denies that Cochran works for Five Points Temporaries of Birmingham, Inc. Cochran worked for Five Points Temporaries, L.L.C. at the time the Complaint was filed. Five Points is without sufficient information to admit or deny the remainder of the allegation. Therefore same is denied

4.      Admitted that Five Points was doing business in Jefferson County. However, denied that Cochran works for Five Points Temporaries of Birmingham, Inc. Cochran worked for Five Points Temporaries, L.L.C. at the time the Complaint was filed.

5.      Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

6.      Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

7.      Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

8.      Admitted.

9.      Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

10.     Denied.

### COUNT ONE – BREACH OF CONTRACT

11.     Five Points hereby incorporates by reference each of its responses to the allegations contained in paragraphs 1 through 10 of the Complaint as if fully set forth herein.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     **WHEREFORE**, Five Points denies that Plaintiff is entitled to the damages and relief requested or otherwise and demands the Court enter judgment in its favor and against Plaintiff as to Count One of the Complaint.

### COUNT TWO – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

19.     Five Points hereby incorporates by reference each of its responses to the allegations contained in paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.    Five Points is without sufficient information to admit or deny this allegation. Therefore same is denied.

21.    Admitted.

22.    Admitted that Plaintiff appears to have sent the letter attached as Exhibit "B" to the Complaint.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    **WHEREFORE**, Five Points denies that Plaintiff is entitled to the damages and relief requested or otherwise and demands the Court enter judgment in its favor and against Plaintiff as to Count Two of the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Five Points denies that Plaintiff is entitled to the damages and relief requested or otherwise and demands the Court enter judgment in its favor and against Plaintiff.

## THIRD DEFENSE
### (Affirmative Defenses)

In further defense of the claims alleged against it by the Plaintiff, Five Points asserts the following affirmative defenses against Plaintiff's Complaint.

### First Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of illegality

3

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of consent.

### Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because the Non-Disclosure and Non-Solicitation Agreement is not enforceable under Georgia law.

### Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because its claim for declaratory judgment does not comply with the Uniform Declaratory Judgments Act sections 6-6-220 *et seq.* of the *Code of Alabama* (1975).

### Eighth Affirmative Defense

The imposition of punitive damages in this case would violate the Fourth, Fifth, Sixth, Eighth, and/or Fourteenth Amendments of the United States Constitution and the corresponding provisions of the Constitution of Alabama of 1901 because the standard of liability for punitive damages is inadequate, unduly vague and subjective, permitting random, arbitrary, capricious, excessive, and/or disproportionate punishment that serves no legitimate governmental interest.

### Ninth Affirmative Defense

Plaintiff's claims are barred because they expressly and/or impliedly consented to the alleged conduct.

### Tenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that the Plaintiff has failed to mitigate its asserted damages.

### Eleventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and/or by the doctrine of laches.

### Twelfth Affirmative Defense

There is no causal relationship between any of the actions of Five Points and the allegations in the Complaint.

### Thirteenth Affirmative Defense

Five Points did not cause nor contribute to the injuries and damages alleged on behalf of the Plaintiff.

4

### Fourteenth Affirmative Defense

Five Points does not owe a duty to Plaintiff; alternatively, even if Five Points owed a duty to Plaintiff, it did not breach any duty owed Plaintiff as alleged in the Complaint.

### Fifteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### Sixteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Five Points was, at all times, fully justified in its course of conduct.

### Seventeenth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Plaintiff's punitive damage claims are subject to the limitations, restrictions and protections of sections 6-11-20, 6-11-21 and 6-11-27 of the *Code of Alabama* (1975).

### Eighteenth Affirmative Defense

Five Points expressly denies that it committed any acts complained of.

### Nineteenth Affirmative Defense

Five Points specifically incorporates by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damage awards which arose in the decision of *BMW of North America v. Gore*, 116 U.S. 1589 (1996).

### Twentieth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Plaintiff's claim for punitive damages under Alabama law is limited by *Ala. Code* § 6-11-21 (2000).

### Twenty-First Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Five Points denies that it is guilty of any conduct that warrants the issue of punitive damages being submitted to a jury or allows Plaintiff to recover punitive damages.

### Twenty-Second Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Plaintiff's claims for recovery of punitive damages are barred by *Ala. Code* § 6-11-20 et seq. (1993).

### Twenty-Third Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Plaintiff's claims for the recovery of punitive damages are barred by *Ala. Code* § 6-11-27 (1993).

### Twenty-Fourth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Five Points specifically incorporates by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damage awards articulated by the United States Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); and *BMW of North America v. Gore*, 116 S. Ct. 1589 (1996); and the application thereof in *BMW of North America, Inc. v. Gore*, 701 So.2d 507 (Ala. 1997).

### Twenty-Fifth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, any award of punitive damages in this case would be subject to scrutiny under the factors set forth in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); and *BMW of North America v. Gore*, 116 S. Ct. 1589 (1996); and the application thereof in *BMW of North America, Inc. v. Gore*, 701 So.2d 507 (Ala. 1997).

### Twenty-Sixth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, any jury making an award of punitive damages in this case must consider the factors set forth in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); and *BMW of North America v. Gore*, 116 S. Ct. 1589 (1996); and the application thereof in *BMW of North America, Inc. v. Gore*, 701 So.2d 507 (Ala. 1997), when assessing the constitutionality of punitive damages and of any such award.

### Twenty-Seventh Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, any award of punitive damages in this case would be unconstitutional under *BMW of North America, Inc. v. Gore*, 116 S. Ct. 1589 (1996), and the application thereof in *BMW of North America, Inc. v. Gore*, 701 So.2d 507 (Ala. 1997), because Five Points received no notice of the severity of the potential penalty that might be imposed as punishment under Alabama law.

### Twenty-Eighth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, any verdict based upon Plaintiff's claim for punitive damages or for compensatory damages for pain and suffering, mental anguish, or emotional distress would violate Five Points' guarantee of due process and equal protection under the laws as established by the United States Constitution and the Alabama Constitution as the standards for assessing the propriety and amount of such damages violate the constitutional prohibition against vague and overbroad laws.

### Twenty-Ninth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, and, to the extent that Plaintiff's demand for punitive damages may result in multiple punitive damage awards to be assessed for the same act or omission against Five Points, this award contravenes Five Points' right to due process under the Fourteenth Amendment of the United States Constitution and the due process clause of Article I, Section 13 of the Alabama Constitution. In addition, such award would infringe upon Five Points' rights against double jeopardy insured by the Fifth Amendment of the United States Constitution and/or Article I, Section 9 of the Alabama Constitution.

### Thirtieth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, an award of punitive damages in the circumstances of this case would violate Five Points' due process rights as embraced by the Fifth and Fourteenth Amendments of the United States Constitution and by the due process clause of Article I, Section 6 and/or 13 of the Alabama Constitution, jointly and separately, as such award would constitute a deprivation of property without due process of law for the following reasons as separately stated herein.

a) Present Alabama procedures may permit the admission of evidence relative to punitive damages in the same proceeding during which liability is determined.

b) Alabama courts lack adequate standards or guidance to instruct a jury with regard to assessing the amount and appropriateness of punitive damage awards.

c) Post verdict review of a punitive damage award is similarly subject to insufficient standards or criterion under present Alabama law to accord Five Points due process of law.

d) Punitive damage awards in Alabama lack a rational relationship to the wrongfulness of a defendant's conduct and/or the compensatory damage award.

e) The procedures utilized by Alabama courts and/or the jury instructions provided to Alabama jurors, jointly and separately, are vague, ambiguous, and overbroad.

f) The extent of punitive damages in Alabama lacks a rational relationship to the legitimate interests to be advanced by the State of Alabama.

g) An award of punitive damages in this case would be penal in nature and thus, would violate Five Points' constitutional rights under the United States Constitution and/or the Alabama Constitution unless Five Points is granted the procedural safeguards afforded criminal defendants including, but not limited to, the constitutional safeguard of a heightened standard of proof beyond a reasonable doubt.

h) Present Alabama procedures fail to provide a constitutional and reasonable limit on the amount of any punitive award against a defendant.

i) Present Alabama procedures permit the imposition of joint and several judgments against multiple co-defendants for different acts or degrees of wrongdoing or culpability.

j) The award of punitive damages on the basis of vicarious liability for the conduct of other's violates a defendant's constitutional rights.

### Thirty-First Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, the imposition of punitive damages in this case would deny Five Points its right to equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Sections 1, 6 and 22 of the Alabama Constitution.   Specifically, Defendant would be treated differently from criminal defendants who are charged for similar or identical culpability.  Alternatively, the absence of adequate and objective standards for guiding in the assessment of punitive damages fails to insure the equality of treatment between and among similarly situated civil defendants.

### Thirty-Second Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, the imposition of punitive damages in this case would violate Five Points' rights under the Contract Clause of Article I, Section 10 of the United States Constitution and Article I, Section 22 of the Alabama Constitution in that it would impair the contractual obligations of the parties to this litigation.

### Thirty-Third Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, Plaintiff's demand for punitive damages violates Five Points' guarantee of due process and equal protection under the laws as established by the United States Constitution and the Alabama Constitution as the standards for assessing the propriety and amount of punitive damages violate the constitutional prohibition against vague and overbroad laws.

8

### Thirty-Fourth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, the award of punitive damages in this case would contravene the constitutional prohibition against ex post facto laws as found in Article I, Section 22 of the Alabama Constitution.

### Thirty-Fifth Affirmative Defense

To the extent that the Complaint in this case alleges claims for wanton conduct and punitive damages, the award of punitive damages in this case would be contravene constitutional safeguards provided to Five Points under the Constitution of the United States and the Constitution of the State of Alabama, jointly and separately.

### Thirty-Sixth Affirmative Defense

To the extent that Plaintiff has suffered no physical injury, § 6-11-21 of the *Code of Alabama* bars Plaintiff's claim for punitive damages insofar as said claim exceeds the greater of three times Plaintiff's compensatory damages or $500,000, which the Alabama Legislature has established as the outer limit of reasonableness for awards of punitive damages as a matter of public policy in this state.  To the extent that Plaintiff does claim that it has suffered physical injury, § 6-11-21 of the *Code of Alabama* bars Plaintiff's claim for punitive damages insofar as said claim exceeds the greater of three times Plaintiff's compensatory damages or $1,500,000, which the Alabama Legislature has established as the outer limit of reasonableness for awards of punitive damages as a matter of public policy in this state.

### Thirty-Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of assumption of risk.

### Thirty-Eighth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, for failure to meet the elements of intentional inference with business relations pursuant to Alabama law.

### Thirty-Ninth Affirmative Defense

Defendant Five Points is not liable for intentional interference with business relations because of the competitor's privilege.

### Fortieth Affirmative Defense

Plaintiff's alleged damages are remote and/or speculative.

### Forty-First Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Five Point's conduct was reasonable and based on independent, legitimate business and economic justifications.

### Forty-Second Affirmative Defense

Plaintiff has not alleged or established the essential elements for obtaining a preliminary injunction.

### Forty-Third Affirmative Defense

Plaintiff has not alleged or established the essential elements for obtaining a permanent injunction.

### Forty-Fourth Affirmative Defense

Five Points reserves the right to amend this Answer and assert additional affirmative defenses.

*/s/ Justin G. Williams*
Justin G. Williams (WIL297)
Attorney for Defendant Five Points Temporaries, L.L.C.

**OF COUNSEL:**



Tanner & Guin, LLC
COUNSELORS AT LAW
Capitol Park Center
2711 University Boulevard (35401-1465)
P. O. Box 3206
Tuscaloosa, Alabama  35403-3206
Telephone (205) 633-0218
Facsimile (205) 633-0318
www.tannerguin.com

10

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the parties or counsel for the parties by placing a true and exact copy of same in the U.S. Mail, postage prepaid and properly addressed, this the 27th day of March, 2009, as follows:

Grant A. Wright
Asher & Wright, P.C.
105 West Second Street
Tuscumbia, Alabama 35674

Barry V. Frederick
The Frederick Firm
5409 Trace Ridge Lane
Birmingham, Alabama 35244

Taffi Smith Stewart
Lloyd, Gray & Whitehead, P.C.
2501 20th Place South, Suite 300
Birmingham, Alabama 35223


*/s/ Justin G. Williams*
OF COUNSEL

272241.1/WMP.wmp

11