**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **AMY COCHRAN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | |
| } | **CASE NO. 2:10-cv-3522-SLB** |
| **FIVE POINTS TEMPORARIES,** } | |
| **LLC; DAVID MCNEIL; TRACY** } | |
| **MCNEIL;** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on defendants' Motion for Judgment on the Pleadings.

(Doc. 38)[1].  Upon consideration of the record, the submissions of the parties, the

arguments of counsel, and the relevant law, the court is of the opinion that defendants'

Motion is due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed–but early

enough not to delay trial–a party may move for judgment on the pleadings."[2]  "Judgment

---

[1]  Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]Plaintiff's Opposition brief challenges the timeliness and validity of defendants' Motion and argues that defendants cannot now assert a 12(c) motion because the defense of failure to state a claim was not preserved in their Answer to the Amended Complaint.  (Doc. 54 at 3-4, 21-22.)  However, as defendants correctly point out in their Reply Brief, this argument is contrary to several provisions under Rule 12 of the Federal Rules of Civil Procedure.  (Doc. 56 at 2-3.)  A motion under Rule 12(c) is substantively the same as a motion under Rule 12(b)(6) for failure to state a claim, however, "a Rule 12(b)(6) motion must be made before the responsive pleadings

on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (internal quotation marks omitted). When considering a motion for judgment on the pleadings the court "'must accept all facts in the complaint as true and view them in the light most favorable to the plaintiff[]." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (quoting *Moore*, 267 F.3d at 1213). "Dismissal is not appropriate unless the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Jiles v. United Parcel Service, Inc.*, 413 F. App'x 173, 174 (11th Cir. 2011) (per curiam) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

---

are filed, while Rule 12(c) motions may be made afterwards." *Am. United Life Ins. Co. v. Bell*, No. 2:09-cv-907-TFM, 2010 WL 1995034, at *2 n.1 (M.D. Ala. May 18, 2010). FED. R. CIV. P. 12(h)(1) sets out when a party "waives any defenses listed in Rule 12(b)(2)-(5)", but (h)(2) states that "[f]ailure to state a claim upon which relief can be granted [12(b)(6)] . . . may be raised: . . . (B) *by a motion under Rule 12(c)*." (emphasis added). Lest there be any question as to whether defendants were required to expressly preserve a defense of failure to state a claim in their Answer to the Amended Complaint, the comments to Rule 12(h) explain that "the more substantial defense[] of failure to state a claim upon which relief can be granted . . . [is] expressly preserved against waiver by amended subdivision (h)(2) and (3)." FED R. CIV. P. 12(h)(2), cmt. Defendants' Motion is proper under Rule 12(c).

## II.  FACTS[3]

Plaintiff, Amy Cochran, is a former employee of defendant, Five Points, a staffing company owned by defendants, Tracy McNeil and David McNeil.  (Doc. 36 ¶¶ 5, 9-11.) After working for Five Points from 2002 to 2006, plaintiff voluntarily terminated her employment in 2006.  (*Id.* ¶¶ 30-31.)  She then began working for a competitor of Five Points, Lyons HR.  (*Id.* ¶¶ 35-37.)  Five Points rehired plaintiff in May 2008 as a sales representative.  (*Id.* ¶ 32.)

Before departing Lyons HR, plaintiff entered into a non-compete and non-solicitation agreement (the "non-compete agreement") with the company.  (*Id.* ¶ 40.) Plaintiff brought a copy of the non-compete agreement to Tracy McNeil who told plaintiff that attorneys for Five Points would review it.  (*Id.* ¶ 41.)  According to plaintiff, Tracy McNeil told plaintiff that attorneys for Five Points reviewed the non-compete agreement and that the "attorneys stated that [it] was 'not worth the paper on which it was written.'" (*Id.* ¶ 42.)  Plaintiff alleges that Tracy McNeil also represented on behalf of defendants that Five Points would pay her attorneys' fees and expenses in the event plaintiff was sued for violation of the non-compete agreement.  (*Id.* ¶ 44.)

In June 2008, Lyons HR filed a lawsuit against plaintiff and Five Points in Alabama state court for allegedly violating the non-compete agreement.  (*Id.* ¶ 48.)  Tracy and David McNeil agreed to pay for plaintiff's legal expenses in the lawsuit, and the

---

[3]As stated above, for purposes of considering the Motion to Dismiss, the facts in the Complaint are accepted as true and viewed in the light most favorable to the plaintiff.

Frederick Firm was hired to represent her.  (*Id.* ¶¶ 49-52.)  On behalf of Five Points, David McNeil signed an engagement letter with the Frederick Firm wherein Five Points agreed to pay the legal fees and expenses associated with the firm's representation of plaintiff in the Lyons HR case.  (*Id.* ¶ 106.)  The Amended Complaint states that at the time David McNeil signed the agreement attached to the engagement letter, he thought Five Points retained a right to alter said agreement.  (*Id.* ¶ 107.)  However, plaintiff claims no such right ever existed and that none of the defendants retained any power to "pre-authorize work of The Frederick Firm in its representation" of plaintiff in the Lyons HR suit "as a condition of Five Points' contractual obligation to pay The Frederick Firm's bills for that representation."  (*Id.* ¶¶ 108-09.)

Initially, Five Points paid for some of plaintiff's attorneys' fees and expenses incurred in defense of the Lyons HR suit.  (*Id.* ¶ 61.)  Then, in February 2009, Five Points stopped paying for plaintiff's representation by the Fredrick Firm in the Lyons HR case.  (*Id.* ¶ 71.)  On February 4, 2009, David McNeil is alleged to have told the Fredericks that they were "'not . . . authorized to do any more work'" on plaintiff's case.  (*Id.* ¶ 72.)  Plaintiff also alleges that around this same time, David McNeil told her not to talk to the Fredericks, and she further claims that Tracy McNeil said plaintiff would be fired if she talked to the Fredericks.  (*Id.* ¶¶ 68-69.)  In December 2010, the Frederick Firm filed this lawsuit on behalf of plaintiff against Five Points and David and Tracy McNeil, asserting counts of race discrimination, retaliation, intentional interference with business

4

relationship, fraud, misrepresentation, and breach of contract.  (*See* doc. 1.)  The Amended Complaint makes similar claims.  (Doc. 36.)

In the Amended Complaint, plaintiff alleges that during her last period of employment with Five Points she frequently heard Tracy McNeil and other Five Points employees make racially derogatory remarks in reference to the African-American employees who worked at Five Points.  (Doc. 36 ¶¶ 75, 78, 82.)  Plaintiff also claims that Tracy McNeil instituted racially discriminatory placement practices at Five Points.  (*Id.* ¶¶ 75-77.)  To summarize, the Amended Complaint alleges that Tracy McNeil would fill customers' requests for temporary employees based on the race of employees as well as the racial preferences expressed by customers.  (*Id.*)  Plaintiff is Caucasian.  (*Id.* ¶ 22.)  The Amended Complaint states that plaintiff was "personally offended by and opposed" these placement practices and disparaging remarks.  (*Id.* ¶ 80.)

On February 9, 2009, plaintiff filed her first Charge with the Equal Employment Opportunity Commission ("EEOC") against Five Points alleging racially hostile environment and race discrimination.  (*Id.* ¶ 85.)  Plaintiff alleges that after Five Points received notice of her first EEOC Charge the company "substantially changed the terms and conditions of [her] employment."  (*Id.* ¶¶ 87-95.)  Then, on March 12, 2009, plaintiff filed her second EEOC Charge based on "Five Points' retaliatory actions taken in response to Plaintiff's filing her first EEOC charge."  (*Id.* ¶ 96.)  Plaintiff alleges that after receiving notice of her second EEOC Charge, Five Points further altered the

5

conditions of her employment.  (*Id.* ¶¶ 97-100.)  Plaintiff's employment at Five Points

was terminated on March 16, 2009.  (*Id.* ¶ 101.)

Defendants' Motion for Judgment on the Pleadings challenges every count of the

Amended Complaint except for  Count II (retaliation in violation of 42 U.S.C. § 1981 and

Title VII of the Civil Rights Act of 1964).  (Doc. 38.)

### III.  DISCUSSION

### A.  COUNT I–RACIALLY HOSTILE WORK ENVIRONMENT

Defendants' Memorandum in Support of their Motion argues that plaintiff's

discrimination claim for a racially hostile work environment under Count I of the

Amended Complaint is due to be dismissed because the alleged harassment was not based

on plaintiff's race, and the allegations on which her claim is based are not objectively

discriminatory.  (Doc. 39 at 8.)  Defendants' contention that plaintiff does not allege

discrimination based on her race but the race of her co-workers raises the issue of whether

plaintiff's claims fall within the scope of Title VII.

#### 1. Whether Plaintiff is a "Person Aggrieved" Under Title VII

Although the Amended Complaint alleges that plaintiff endured a hostile work

environment based on race and that she was injured by defendants' conduct, the court is

of the opinion that plaintiff fails to state a claim for racial discrimination hostile work

environment because she is not a "person aggrieved" within the "zone of interest" of Title

VII.

6

Title VII of the Civil Rights Act of 1964 codified at 42 U.S.C. § 2000e-2(a)(1) prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  Subsection (a)(2) provides that an employer may not "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).  Among other observations, the Eleventh Circuit has stated that in terms of a claim for hostile work environment, "Title VII is not a civility code, and not all profane . . . language or conduct will constitute discrimination in the terms and conditions of employment."  *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc).  The court has further explained that hostile work environment is a type of disparate treatment as opposed to disparate impact: "Disparate treatment can take the form either of a 'tangible employment action,' such as a firing or demotion, or of a 'hostile work environment' that changes 'the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned.'  *Id.* (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004)).

Additionally, the statute states that after exhaustion of one's administrative remedies, a civil action under Title VII "may be brought . . . by the person claiming to be

aggrieved." 42 U.S.C. § 2000e-5(f)(1)(A). Thus, there is a question whether the alleged hostile work environment based on defendants' statements and placement practices concerning the African-American employees discriminated against plaintiff such that she is "aggrieved" as that term is used under Title VII. The Supreme Court recently addressed the issue of when a person is considered "a person aggrieved" under Title VII. In *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 866 (2011), the Court held that whether a plaintiff qualifies to sue as a "person aggrieved" under Title VII is determined by analyzing whether or not she falls within the "zone of interest" of the statute.

In *Thompson*, petitioner Eric Thompson sued respondent, North American Stainless ("NAS") for retaliation against his fiancé after she filed an EEOC charge against NAS for sex discrimination and Thompson was fired thereafter. *Id.* at 867. The U.S. District Court for the Eastern District of Kentucky granted summary judgment for NAS "concluding that Title VII does not permit third party retaliation claims." *Id.* (internal citations and quotations omitted). The Sixth Circuit Court of Appeals ultimately affirmed *en banc* and held that because Thompson did not engage in "statutorily protected activity" on behalf of himself or his fiancé, he was "not included in the class of persons for whom Congress created a retaliation cause of action." *Id.* (internal quotations and citations omitted). The Supreme Court reversed. *Id.* at 869.

After construing the facts as true and deciding that NAS's decision to fire Thompson to retaliate against his fiancé violated Title VII's anti-retaliation provision, the

Court then addressed whether Thompson was a proper plaintiff as a "person claiming to be aggrieved" under Title VII.  *Id.* at 868-69.  Prior to *Thompson*, the Supreme Court in *Trafficante v. Metro. Life Ins. Co.*, "suggested in dictum that the Title VII aggrievement requirement conferred a right to sue on all who satisfied Article III standing."  *Id.* at 869 (citing 409 U.S. 205 (1972)).  The *Thompson* Court, however, rejected both the broad standard inferred from *Trafficante* as well as respondent's urging of a very narrow reading of the statute and instead settled on the "zone of interest" standard:

> We now find that this dictum was ill-considered, and we decline to follow it. If any person injured in the Article III sense by a Title VII violation could sue, absurd consequences would follow. . . . . [T]he term "aggrieved" must be construed more narrowly than the outer boundaries of Article III.
>
> . . . .
>
> We have described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). We hold that the term "aggrieved" in Title VII incorporates this test, enabling suit by any plaintiff with an interest "arguably [sought] to be protected by the statutes," *National Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 495, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (internal quotation marks omitted), while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII.

*Id.* at 869-870.  The Court then applied the "zone of interest" test and concluded that Thompson fit within the purview of Title VII.  *Id.* at 870.  In its reasoning, the Court found generally that Thompson "was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions."  *Id.*  But the Court also focused on the more narrow factual circumstances that Thompson was "not an accidental victim of the retaliation."  *Id.*  On the contrary, explained the Court, firing Thompson was the "employer's *intended means* of harming" his fiancé for her filing the EEOC charge of sex discrimination–"[h]*urting him was the unlawful act by which the employer punished her*."  *Id.*  (emphasis added).  While the *Thompson* Court applied the "zone of interest" test to facts relating to Title VII's anti-retaliation provision, the holding was in the context of subsection (f)(1) and narrowed the definition of who may sue civilly as an "aggrieved" person.  *Id.* at 869-70.

The court is of the opinion that under the "zone of interest" standard articulated in *Thompson*, plaintiff's interests are not those "arguably [sought] to be protected," and she is not a person "aggrieved" within the meaning of Title VII.  *Id.* at 869 (alteration in original) (internal quotation marks and citations omitted).  Applying the Supreme Court's holding in *Thompson* to hostile work environment claims, an "accidental" victim of discriminatory action does not fall within the "zone of interest" of Title VII.  Plaintiff might reasonably be classified as an "accidental" victim; she does not allege that Five Points took any discriminatory action against its African-American employees with the

intent to affect *her*.  Rather, under the allegations in the Amended Complaint, plaintiff was merely a bystander to whom no discriminatory or harassing conduct was actually directed.  Thus, under the specific facts and circumstances alleged in the Amended Complaint, and in light of the Supreme Court's discussion of "zone of interest" in *Thompson*, plaintiff is not within the "zone of interest" sought to be protected by Title VII and therefore lacks standing to assert a claim for a racially hostile work environment.

The court's finding is consistent with Eleventh Circuit precedent,[4] which has held that third parties or bystanders affected by workplace discrimination only have standing under Title VII when the discrimination is based on an associational relationship.  In *Parr*

---

[4]Plaintiff's Opposition brief directs the court's attention to a case from the former Fifth Circuit, *EEOC v. Mississippi College*, in which that court held that a white employee could maintain a Title VII claim against her employer for its alleged "discriminat[ion] against blacks on the basis of race in recruitment and hiring."  626 F.2d 477, 483 (5th Cir. 1980).  While the Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the holding of *Mississippi College* was based on that court's broad interpretation of standing under Title VII, which it derived from *dictum* in *Trafficante*:

> We agree with other circuits that have held that the strong similarities between the language, design, and purposes of Title VII and the Fair Housing Act require that the phrase "a person claiming to be aggrieved" in s 706 of Title VII must be construed in the same manner that Trafficante construed the term "aggrieved person" in s 810 of the Fair Housing Act.

*Id.* at 482 (citations omitted).  As the court discussed above, the Supreme Court's recent holding in *Thompson* rejects such a broad interpretation of an "aggrieved" person under Title VII.  131 S. Ct. at 869.  Based on the holding in *Thompson*, the court declines to follow the interpretation of Title VII and holding in *Mississippi College*.

11

*v. Woodmen of the World Life Ins. Co.*, the Eleventh Circuit reversed the district court's dismissal of the appellant's Title VII race discrimination claim arising out of the appellee's alleged refusal to hire appellant because he was white and his wife was African-American.  791 F.2d 888, 891-92 (11th Cir. 1986).  The *Parr* court explained that a Title VII claim arising out of discrimination against one's interracial marriage or association with another race is actionable even though the alleged discrimination is not specifically directed at the complainant's race: "Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race. It makes no difference whether the plaintiff specifically alleges in his complaint that he has been discriminated against because of his race."  791 F.2d at 892; *see also Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 995 (6th Cir. 1999) (explaining that a Title VII claim does not have to allege discrimination based specifically on the plaintiff's race when "[t]he net effect is that the [defendant] has allegedly discriminated against [plaintiff] because of his race."); *cf. Floyd v. Amite Cnty. School Dist*, 581 F.3d 244, 250-51 (5th Cir. 2009) (Affirming summary judgment against plaintiff's Title VII claim because evidence reflected that the alleged racial animus was directed solely towards plaintiff's (an African-American track coach) white athletes and was not based on his relationship with said athletes: "nothing in these statements supports a conclusion that the animus was directed at [plaintiff] on the basis of *his* race.").

Unlike the complainants in *Thompson* and *Parr*, Count I of the Amended Complaint alleges no discrimination directed at plaintiff because of her *relationship* with her African-American coworkers or any other relationship on which plaintiff could claim she was discriminated against because she was white and associated with African-Americans.  Rather, plaintiff alleges that she was subjected to a hostile environment "based on race and color" and that she was directed by plaintiffs to "engage . . . in employment practices that were unlawfully discriminatory based on employees' race and color."  (Doc. 36 ¶ 116.)  In an almost factually identical case to plaintiff's, *Bermudez v. TRC Holdings, Inc.*, the Seventh Circuit affirmed summary judgment against a white employee's hostile work environment claim that was based on her employer's racially discriminatory employment practices and behavior, neither of which were directed at her personally or at any relationship between herself and her coworkers.  138 F.3d 1176, 1179-80 (7th Cir. 1998).  One of the appellants in *Bermudez*, Schlichting–a white female–worked at an employment placement agency owned by appellee, TRC, and alleged that her coworkers openly discriminated against African-Americans by arranging placements based on clients' racial preferences.  *Id.* at 1180.  She also alleged that a supervisor not only treated the company's only black employee less favorably than whites but bragged about rewards from a client for accommodating a preference for white-only placements.  *Id.*  Although Schlichting was personally offended by such discrimination

and found it difficult to work in such an atmosphere, the *Bermudez* court found that she

did not have standing under Title VII because the discrimination was not directed at her:

> None of these words or deeds was directed against Schlichting. White women were welcome at TRC and fared well there. Perhaps TRC was violating the rights of persons who came to it seeking placement for employment, but Schlichting is not entitled to enforce their rights . . . . Her claim is not that white women were harassed on account of *their* race or sex, but that persons of any race or sex who were opposed to discrimination felt uncomfortable. We have never recognized this as a valid theory of discrimination under Title VII, and it is hard to see how it could be reconciled with the proposition that laws must be enforced by the victims (or by public prosecutors) rather than by third parties discomfited by the violations. If unease on observing wrongs perpetrated against others were enough to support litigation, all doctrines of standing and justiciability would be out the window.

*Id.*

The *Bermudez* court went on to distinguish Schlichting's case from a prior

decision, which held that such third-party hostile environment claims were actionable *if*

the alleged discrimination resulted in "'the loss of important benefits from interracial

associations.'"  *Id.* (quoting *Stewart v. Hannon*, 675 F.2d 846, 850 (7th Cir. 1982)).  The

court also noted a decision in which the Fourth Circuit divided evenly on the question of

whether loss of interracial associations and adverse working conditions based on

discrimination gave rise to a "derivative" hostile work environment claim; however, the

*Bermudez* court did not reach the issue of such claims as it found that Schlichting's

allegations did not show a "poisoned working atmosphere" and concluded that although

her allegations "reflect[ed] actionable discrimination against applicants for employment, a reasonable person in Schlichting's position would have found them 'merely offensive'", because they posed no threat to her personally." *Id.* at 1181 (citing *Childress v. Richmond*, 134 F.3d 1205 (4th Cir. 1998) (en banc) (per curiam)).[5]

Plaintiff attempts to position herself as a "person aggrieved" within the "zone of interest" of Title VII.  She claims that Tracy McNeil's comments concerning Five Points's African-American employees and the considerations given by Ms. McNeil in determining which employee to send to different clients created a racially discriminatory and hostile work environment that, in turn, was a violation of her own personal right to work in an environment unaffected by racial hostility.  However, the court finds that plaintiff lacks standing under Title VII as she is not within the "zone of interest" for which the "statutory prohibitions" were created.[6]  *Thompson*, 131 S. Ct. at 870.  Although

---

[5]In *Childress*, seven white male police officers appealed from dismissal of their hostile work environment claims, which were based on a supervisor's alleged "disparaging remarks to and about female and black members of the police force that adversely affected vital relationships and working conditions within the force." 134 F.3d 1205, 1207.  Although the decision of the district court was originally vacated on appeal and the Fourth Circuit divided evenly on rehearing *en banc*, dismissal of the Title VII claims was affirmed.  *Id.*

[6]The court notes the conflicting EEOC opinions cited by the parties addressing whether employees may assert discrimination claims on behalf of aggrieved co-workers; such opinions, however, are not binding.  *Blizard v. Fielding,* 572 F.2d 13, 15-16 (1st Cir. 1978) (cited with agreement by the Eleventh Circuit in *Moore v. Devine*, 767 F.2d 1541, 1550 (11th Cir. 1985)).  And while the court should give formal opinions handed down after adjudication by an administrative agency great deference under the *Chevron* standard, such deference is only necessary if the court finds that the administrative opinion is "reasonable" and based on a "permissive construction" of the statute.  *See Chevron, U.S.A., Inc. v Natural Res. Def. Council,*

the alleged derogatory slurs and discriminatory employment practices "offended"

plaintiff, at no time did she endure discrimination directed at her personally[7] or based on

her race or any association with African-American coworkers.  (Doc. 36 ¶ 80.)  While

Five Points's African-American employees "might have been subjected to a hostile work

environment . . . [plaintiff] cannot recover for the harassment allegedly suffered by [her]

co-employee[s]."  *Holiness v. Moore-Handley, Inc.*, 114 F. Supp. 2d 1176, 1187 (N.D.

Ala. 1999).  Therefore, plaintiff's Title VII claim in Count I for hostile work environment

will be dismissed.

### 2. Plaintiff's Section 1981 Discrimination Claim (Count I)

Count I of the Amended Complaint also alleges a claim for race discrimination in

violation of 42 U.S.C. § 1981.[8]  (Doc. 36 ¶¶ 114-19.)  It has long been held that Section

---

104 S. Ct. 2778, 2782-83 (1984) (discussing, in general, the deference to be given to an administrative agency's interpretation of a statute for which they were appointed to administer and interpret).  Thus, in light of the Supreme Court's "zone of interest" discussion in *Thompson* and the more recent and conflicting EEOC opinion cited by defendant, the broad interpretation of standing under Title VII found in the EEOC opinions cited by plaintiff are no longer reasonable or based on a permissive construction of the statute.

[7] While the court notes that racially offensive language need not be targeted at the plaintiff to support a Title VII hostile work environment claim, the discrimination plaintiff alleges was aimed at African-Americans, not persons of plaintiff's race.  *See Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 n.2 (11th Cir. 1982).

[8] Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

1981 applies to workplace discrimination based on race.  *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).  It is also well-settled that Section 1981 is applicable to employment discrimination against whites.  *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976).  Further, the Eleventh Circuit has held that claims for race discrimination are cognizable under both Title VII and Section 1981 and "'have the same requirements of proof and use the same analytical framework.'" *Blue v. Dunn Const. Co., Inc*., No. 10-14345, 2011 WL 5903535, at *1 (11th Cir. Nov. 23, 2011) (quoting *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11th Cir.1998)).  In making such an observation, the Eleventh Circuit has stated that the court may "'explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.'"  *Keith v. MGA, Inc.*, 211 F. App'x 824, 827 (11th Cir 2006) (per curiam) (quoting *Standard*, 161 F.3d at 1330)).

There is some confusion surrounding which claims defendants challenge under Count I of the Amended Complaint.  Defendants' Motion, (doc. 38), addresses Count I of the Amended Complaint in its entirety, but defendants' Memorandum in Support, (doc. 39), appears to only address plaintiff's Title VII claim under Count I, while defendants' Reply Brief, (doc. 56), discusses plaintiff's Section 1981 claim in conjunction with the

---

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Title VII claim.  The court, however, finds that plaintiff's Section 1981 claim fails for the same reason her Title VII claim cannot survive: plaintiff is white and only alleges a pattern of offensive and racially derogatory remarks and employment practices against defendants' African-American employees; plaintiff may not enforce a third party's rights to be free from the type of discrimination prohibited by Section 1981.  While the Eleventh Circuit has not addressed this exact issue, it has held that a white plaintiff may maintain a claim under Section 1981 for discrimination based on an *interracial marriage or association*.  *Parr*, 791 F.2d at 890.  Other courts have indicated, however, that the concepts of prudential standing bar a Section 1981 plaintiff from stating a claim based on discrimination against others belonging to a different race.  *See, e.g.*, *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1279 (D.C. Cir. 1994) (finding fair employment organization did not have standing under Section 1981 based on defendant's alleged discriminatory hiring practices, "concluding that [Section] 1981 does not confer a cause of action on persons whose injuries derive only from the violation of others' rights"); *Blanks v. Lockheed Martin Corp.*, 568 F. Supp. 2d 740, 743 n.4 (S.D. Miss. 2007) (stating generally that standing in the context of Section 1981 and Title VII "is typically found where the plaintiff, though not the direct target of a defendant's discriminatory practices or harassment, is a member of the same class as those persons who are the targets of discrimination and harassment"); *cf. Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 884 (7th Cir. 1998) (stating that "whether the employee has been

18

discriminated against and whether that discrimination was 'because of' the employee's race" are the proper threshold inquiries in a Section 1981 claim).

Plaintiff only alleges defendants' conduct discriminated against African-Americans.  Count I claims that defendants mistreated plaintiff "on the basis of [her] race and color," however, such allegations have absolutely no support anywhere in the Amended Complaint.  (Doc. 36 ¶ 116.)  While plaintiff was "offended by and opposed" the alleged repeated discrimination in the workplace, nothing in the Amended Complaint suggests that she endured racial discrimination as a white employee at Five Points.[9]  (*Id.* ¶ 80.)  To borrow from the analysis in *Thompson*, plaintiff's claim is not within the zone of interest of Section 1981 because she does not allege any racial discrimination directed at her based on her race or her association with African-Americans.  Further, plaintiff cannot assert a claim under Section 1981 based on discrimination and a work environment hostile to *other employees*.  Plaintiff's discrimination claim under Section 1981 will be dismissed.

---

[9]The Amended Complaint alleges plaintiff was retaliated against for opposing defendants' discriminatory conduct; however, the present Motion does not challenge those claims, and therefore, the court does not address those allegations in conjunction with plaintiff's discrimination claims.

## B.  COUNTS III AND VIII–INTENTIONAL INTERFERENCE CLAIMS

### 1.  Intentional Interference–Failure to Pay Legal Fees (Count III)

Count III of the Amended Complaint asserts a claim of intentional interference with a business relationship.  (Doc. 36 ¶¶ 128-31.)  This is apparently based on the alleged statements made by the McNeils in February 2009 ordering plaintiff "not to talk to her attorneys" and threatening her termination if she did so,[10] and Five Points's cessation of payments for plaintiff's legal fees and expenses incurred by the Frederick Firm in the Lyons HR case. (*Id.* ¶¶ 48-54, 61-62, 68-69, 71.)  Specifically, plaintiff alleges that she "had a business relation with the Frederick Firm" in the form of an attorney-client relationship and that defendants were aware of said relationship and were "strangers" to the relationship and intentionally interfered, thus resulting in injuries to plaintiff.  (*Id.* 128-30.)  Defendants argue that Count III fails under Alabama law because defendants were not strangers to the business relationship between plaintiff and the Frederick Firm.  (Doc. 39 at 13-18.)

_____

[10]In plaintiff's Opposition brief, she contends "that the alleged interference is with plaintiff's attorney-client relationship with her attorneys, The Frederick firm, in their pursuit, on Plaintiff's behalf, of her claims against defendants."  (Doc. 54 at 31.)  However, as defendants point out in their Reply Brief, plaintiff's argument is contrary to the allegations in the Amended Complaint, which only refer to the payment of fees and statements regarding the Lyons HR suit. (Doc. 56 at 23.)  Moreover, the alleged statements by the McNeils demanding that plaintiff and the Fredericks not talk to each other occurred the week before plaintiff even filed her first EEOC charge.  (Doc. 36 ¶¶ 68-70, 85.)  In short, all of the allegations in the Amended Complaint that could support plaintiff's claim for intentional interference with a business relationship refer to the Frederick Firm's representation of plaintiff in the Lyons HR case.

20

The Eleventh Circuit has recognized that under Alabama law, the tort of interference with a business relationship includes the following elements: "(1) the existence of a protected business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302 (11th Cir. 2010) (citing *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14-15 (Ala. 2009)). It is plaintiff's burden to plead "that the defendant was a stranger to the protected business relationship with which the defendant interfered." *Edwards*, 602 F.3d at 1302 (citing *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003)). "The Alabama Supreme Court has stated that 'a defendant is a party in interest to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship.'" *Id.* (quoting *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004)). Stated differently by the Alabama Supreme Court in *Wadell*: "A person with a direct economic interest in the contract is not a stranger to the contract. Parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." 875 So. 2d at 1157 (internal quotation marks and citations omitted). Further, a third party "involved in creating th[e] relationship" between two other parties is not a stranger to that relationship. *Tom's Foods*, 896 So. 2d at 455.

The Amended Complaint fails to adequately plead that defendants were strangers to the business relationship that appears to be the subject of Count III–the Frederick

Firm's representation of plaintiff in the Lyons HR suit.  In fact, plaintiff's factual allegations[11] lead to the opposite conclusion: defendants were not strangers to plaintiff's relationship with the Frederick Firm.  The Amended Complaint states that after plaintiff and Five Points were sued for allegedly violating the non-compete agreement, the McNeils "suggested that Plaintiff use The Frederick Firm to represent her in the Lyons HR lawsuit."  (Doc. 36 ¶ 50.)  Thereafter, plaintiff agreed to the Frederick Firm's representation of her and the Fredericks indeed appeared on her behalf in the Lyons HR suit.  (*Id.* ¶¶ 51-52.)  The Amended Complaint states that in August, 2008, David McNeil "signed a contract in which Five Points promised and agreed to pay legal fees and expenses associated with The Frederick Firm's representation of Plaintiff" in the Lyons HR case.  (*Id.* ¶ 106.)  Five Points then allegedly "paid for some of Plaintiff's attorneys' fees" but then "stopped paying, failed and refused to pay."  (*Id.* ¶ 61-62.)

Based on the allegations in the Amended Complaint, as a matter of law, defendants were not strangers to the relationship between plaintiff and the Frederick Firm. Defendants not only helped form the relationship between plaintiff and the Frederick Firm by recommending that plaintiff use the Frederick Firm to defend her in the Lyons

---

[11]The court notes that Count III of the Amended Complaint asserts that "Defendants were strangers" to the business / attorney-client relationship between plaintiff and the Frederick Firm. (Doc. 36 ¶ 128.)  However, as discussed herein, the factual allegations elsewhere in the Amended Complaint contradict plaintiff's statement.  Such conclusory pleading, without more, amounts to a "formulaic recitation of the elements of a cause of action," which is insufficient. *Twombly*, 550 U.S. at 555.

HR suit, they entered into an agreement with the Frederick Firm to pay for plaintiff's representation.  Thus, defendants were "involved in creating th[e] relationship" between plaintiff and the Frederick Firm both in recommending the firm's services as well as agreeing to pay for plaintiff's representation.  *Tom's Foods*, 896 So. 2d at 455.  Further, the court finds that defendants were part of an "interwoven contractual arrangement" between the Frederick Firm and plaintiff.  *Wadell*, 875 So. 2d at 1157.  Plaintiff's allegations in the Amended Complaint even refer to Five Points's duty under the agreement as a "contractual obligation to pay the Frederick Firm's bills for that representation."  (Doc. 36 ¶ 109.)  What's more, Count IX of the Amended Complaint asserts a claim for breach of contract against defendants arising out of Five Points's alleged failure "to pay . . . for Plaintiff's benefit, the Frederick Firm's fees and expenses incurred in its representation of Plaintiff in the Lyons HR case."  (*Id.* ¶ 171.)  The allegations in the Amended Complaint clearly portray the defendants as "participant[s] [with the plaintiff] in a business relationship arising from interwoven contractual arrangements." *Waddell*, 875 So. 2d at 1157.  Such allegations are contrary to any assertion by plaintiff that defendants are strangers to the claimed business relationship between herself and the Frederick Firm.  Count III of the Amended Complaint thus fails to state a claim for intentional interference with a business relationship and will be dismissed.

**2.  Intentional Interference–Defendants' Motion to Disqualify (Count VIII)**

Count VIII of the Amended Complaint asserts an additional claim of unlawful interference with business relations.  (Doc. 36 ¶¶ 162-65.)  Although not specifically plead under Count VIII, the claim is apparently based on a Motion to Disqualify plaintiff's counsel, (doc. 5), filed by defendants' former attorney in this case: "Defendants, by and through their attorney . . . and the law firm of which she was . . . an employee and an agent . . . have further intentionally interfered with Plaintiff's attorney-client business relationship with The Frederick Firm, further proximately causing injuries to Plaintiff – even more emotional distress."  (*Id.* ¶ 164.)  To summarize from the allegations under Count VII ("Additional Unlawful Retaliation") of the Amended Complaint, the Motion to Disqualify arises out of the Frederick Firm's representation of plaintiff in the Lyons HR suit under an agreement with Five Points to pay for plaintiff's fees and expenses coupled with the Frederick Firm's representation of plaintiff in this case.  (*Id.* ¶¶ 148-59.)  On September 2, 2011, the court entered an Order denying defendants' Motion to Disqualify.  (Doc.  44 at 1.)

Defendants challenge plaintiff's "additional unlawful interference" claim in Count VIII by arguing that plaintiff suffered no damages because her relationship with the Frederick Firm was not severed or impeded.  (Doc. 39 at 17-18; doc. 56 at 25-26.) Although the court finds that an actual severance of the business relationship is not

required to maintain a claim for unlawful interference, plaintiff has failed to sufficiently

plead the element of damages such that her claim is plausible and not speculative.

    As the court has already stated above, a cause of action in Alabama for unlawful

interference with business relations includes the element of damages. *Edwards*, 602 F.3d

at 1302.  The Alabama Supreme Court has held that damages for unlawful interference

may include emotional distress, as long as it is "reasonably to be expected to result from

the interference." *White Sands Grp.*, 32 So. 3d at 17 (Ala. 2009) (quoting *KW Plastics v.

United States Can Co.*, 131 F. Supp. 2d 1265, 1268 (M.D. Ala 2001)); *see also Bill Salter

Adver., Inc. v. City of Atmore*, --- So. 3d ---, 2010 WL 4151989, at *9 (Ala. Civ. App.

2010) ("emotional-distress and harm-to-reputation damages may properly form the basis

of a damages award in an intentional-interference-with-business-relations action.").

Although plaintiff states that she suffered emotional distress as a result of defendants'

Motion to Disqualify, Count VIII is due to be dismissed because it fails to state a

plausible claim.  *See  Speaker v. United States Dept. of Health and Human Servs. Centers

for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the

pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite

these statutory elements in conclusory fashion. Rather, [her] allegations must proffer

enough factual content to 'raise a right to relief above the speculative level.'" (quoting

*Twombly*, 550 U.S. at 555)).  Count VIII of the Amended Complaint states that

defendants' alleged intentional interference "further proximately caus[ed] injuries to

Plaintiff – even more emotional distress." (Doc. 36 ¶ 164.) This statement implies that the claim for intentional interference is not the only complained of conduct by defendants causing plaintiff to endure emotional distress. Indeed, the *only* other mention of such damages is under plaintiff's claim for "additional unlawful retaliation" under Title VII and § 1981, which is also based on defendants' Motion to Disqualify: "The above-described additional retaliatory conduct on the part of Defendants has injured Plaintiff, causing her even more emotional distress." (Doc. 36 ¶ 159.) Aside from these two conclusory statements, the Amended Complaint does not allege facts reflecting that plaintiff suffered emotionally due to defendants' Motion to Disqualify or for any other reason. The Amended Complaint does not make any other reference to the Motion to Disqualify except in Counts VII and VIII. Moreover, the business relationship between plaintiff and the Frederick Firm was never severed, a fact which further erodes the plausibility of plaintiff's claim. Plaintiff's assertion of "even more emotional distress" does not constitute damages reasonably expected to result from the alleged intentional interference. Thus, Count VIII will be dismissed.

## C. COUNTS IV-VI, AND X–FRAUD AND SUPPRESSION CLAIMS ARISING OUT OF THE LYONS HR SUIT

Counts IV-VI, and X of the Amended Complaint assert various claims of fraud and suppression arising out of the events leading up to and following the Lyons HR lawsuit.

The court now addresses each claim individually and will reference the relevant facts where necessary.

Fed. R. Civ. P. 9(b) requires an elevated pleading standard for claims of fraud: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."  However, the rule also states that elements indicating a person's state of mind, such as malice, "may be alleged generally."  *Id.*  Regardless of whether the plaintiff alleges fraud, she must provide "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) ("[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981))).

## 1. Count IV–Misrepresentation

Count IV of the Amended Complaint asserts that Tracy McNeil "fraudulently and falsely misrepresented" that the non-compete agreement plaintiff entered into with Lyons HR was not enforceable and that plaintiff detrimentally relied on said misrepresentation. (Doc. 36 ¶ 133.)

In Alabama, a claim of misrepresentation requires the plaintiff to allege that defendant (1) made a false representation, (2) of material existing fact, (3) which plaintiff relied upon, and (4) as a result, suffered damage. *Crowder v. Memory Hill Gardens, Inc.*, 516 So. 2d 602, 604 (Ala. 1987). These elements remain the same regardless of whether the representations at issue were made willfully, recklessly, or by mistake. *Burroughs Corp. v. Hall Affiliates, Inc.*, 423 So. 2d 1348, 1353 (Ala. 1982) (citations omitted); *see also* ALA. CODE § 6-5-101 (1975) ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."). Additionally, for a statement to be actionable as misrepresentation, the statement must be one of *fact* and not mere *opinion*. *Jones v. McGuffin*, 454 So. 2d 509, 512 (Ala. 1984).

Defendants argue that Count IV fails because the allegations in the Amended Complaint–Tracy McNeil's representation to plaintiff that Five Points's attorneys stated that the non-compete was not enforceable–constitute an opinion and not a statement of fact. (Doc. 39 at 21.) The court agrees.

It is well-settled in Alabama that statements of future outcomes are considered opinions. *See, e.g.*, *Lawson v. Cagle*, 504 So. 2d 226, 227 (Ala. 1987) (per curiam) (internal citations and quotation marks omitted) ("Ordinarily a prediction as to events to

occur in the future is to be regarded as a statement of opinion only, on which the adverse party has no right to rely."). Defendants' Motion will be granted as to Count IV.

### 2. Count V–Promissory Fraud

Count V of the Amended Complaint, titled "Another Fraud," apparently asserts a claim for promissory fraud: "Tracy McNeil fraudulently and falsely represented to Plaintiff that Defendants would pay Plaintiff's attorneys' fees and expenses for Plaintiff's defense" if she was sued for breach of the non-compete agreement she signed when she left Lyons HR." (Doc. 36 ¶ 138.) Plaintiff further states she relied on the misrepresentation and sustained damages as a consequence. (*Id.* ¶ 139.) This claim is based on a promise to perform in the future. As defendants correctly point out, a common law cause of action in Alabama for promissory fraud is based on a promise to perform in the future and includes two elements in addition to those required for ordinary fraud:

> "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim . . . , two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive."

*Heisz v. Galt Indus., Inc.*, --- So. 3d ---, 2012 WL 29190, at *6 (Ala. 2012) (quoting *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1210 (Ala. 2008)); *see also Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1204 (11th Cir. 2003) ("'[T]o

support a claim of promissory fraud, the plaintiff must show that at the time of the alleged

misrepresentation (that is, the promise), the defendant intended not to do the act or acts

promised, but intended to deceive the plaintiff.'" (*quoting Goodyear Tire & Rubber Co.*

*v. Washington*, 719 So. 2d 774, 776 (Ala. 1998))).   A plaintiff pursuing a theory of

promissory fraud, which requires proof of intent, bears a heavier burden than the one who

relies solely on misrepresentation.  *Intercorp v. Penzoil*, 877 F.2d 1524, 1534 (11th Cir.

1989).

　　　　Plaintiff fails to state a claim for promissory fraud because nowhere is it alleged or

inferred from the alleged facts that defendants intended to deceive plaintiff at the time the

promises to perform in the future were made.  Accepting the facts in the Amended

Complaint as true, Tracy McNeil, on behalf of defendants, represented to plaintiff that

defendants "would pay" her attorneys' fees if she was sued for violating the Lyons HR

non-compete agreement.  (Doc. 36 ¶ 45.)  Then after learning of the suit against plaintiff

and Five Points, the McNeils "again represented to Plaintiff [that] Five Points would pay

for Plaintiff's attorneys' fees." (*Id.* ¶ 49.)  These are not statements of *existing facts*, they

are promises to perform in the future.  Indeed, defendants performed by paying for

plaintiff's representation from June 27, 2008 when the suit was filed, until sometime in

February 2009.  (*Id.* ¶¶ 48, 61, 71.)  Plaintiff must allege facts supporting her claim that at

the time the promise was made, the defendants intended not to do the act or acts

promised, but intended to deceive the plaintiff.  *Compare Escapes!, Inc. v. Legacy Land*

& *Dev. LLC*, No. 09-00515-KD-M, 2010 WL 796987, at *9 (S.D. Ala. Mar. 8, 2010)

(denying defendant's motion to dismiss and finding that the factual allegations, which

included "the procedures . . . completed" by defendant in furtherance of the promise and a

"[false] assertion that . . . money had been wired, when it had not," unambiguously set out

the elements of promissory fraud), *with Depaola v. Nissan N. Am., Inc.*, No. 1:04CV267,

2006 U.S. Dist. LEXIS 29084, at *23-24 (M.D. Ala. May 2, 2006) (dismissing

promissory fraud claim against some of the defendants because plaintiff failed "to allege

[defendants] . . . possessed a present intent not to perform any promised acts").  Although

defendants "stopped paying" plaintiff's fees  "[a]fter repeated representations" to the

contrary, (doc. ¶ 62), "[t]he failure to perform a promised act is not in itself evidence of

intent to deceive at the time the promise is made."  *Picker Int'l, Inc. v. Parten*, 935 F.2d

257, 265 (11th Cir. 1991) (*quoting Russellville Prod. Credit Ass'n v. Frost*, 484 So.2d

1084, 1086 (Ala. 1986)).  Plaintiff does not allege sufficient facts to state a claim for

promissory fraud.  Accordingly, Count V of the Amended complaint will be dismissed.

**3.  Counts VI and X–Fraudulent Suppression**

Counts VI and X of the Amended Complaint–titled "Another Fraud" and

"Additional Fraud and Misrepresentation" respectively–appear to assert claims for

fraudulent suppression based on defendants' failure to truthfully and fully disclose all

facts regarding defendants' representation to plaintiff that her attorneys' fees in

connection with the Lyons HR suit would be paid by Five Points.  (Doc. 36 ¶¶ 142-44,

176-78.)  As discussed below, the court finds that plaintiff has not alleged sufficient facts

to state claims for suppression.[12]

The Alabama Supreme Court has stated that a claim of fraudulent suppression

must include factual allegations "showing '(1) that the defendant had a duty to disclose

material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that

the concealment or failure to disclose induced the plaintiff to act; and (4) that the

defendant's action resulted in harm to the plaintiff.'"  *Bethel v. Thorn*, 757 So. 2d 1154,

1162 (Ala. 1999) (quoting *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n.10

(Ala. 1997)).  "'Without a duty to disclose, there can be no recovery for suppression.'"

*Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272, 1278 (M.D.

Ala. 2007) (quoting *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d

883, 891 (Ala. 2005)).  The duty to disclose can arise either as the result of a confidential

relationship between the plaintiff and defendant or based on the particular circumstances

giving rise to the fraud.  *Grace v. Interstate Life & Accident Ins. Co.*, 916 F. Supp. 1185,

1189 (M.D. Ala. 1996) (citing ALA. CODE § 6-5-102 (1975)).  According to the Alabama

Supreme Court, some factors to help assess whether the alleged circumstances create a

duty of disclosure include, "'(1) the relationship of the parties; (2) the relative knowledge

of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to

---

[12]The court notes that Counts VI and X essentially allege the same cause of action and are
based on the same factual circumstances.

ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.'" *Bethel*, 757 So. 2d at 1162 (quoting *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 842-43 (Ala.1998)). This analysis is made on a "case-by-case" basis and is flexibly applied. *Grace*, 916 F. Supp. at 1189.

Plaintiff does not allege sufficient facts to state a claim of suppression. According to the Amended Complaint, which the court must accept as true for purposes of defendants' Motion, in reliance on statements by Tracy McNeil that Five Points would pay plaintiff's legal fees if sued for breach of the non-compete agreement, plaintiff began working for Five Points in May 2008. (Doc. 36 ¶¶ 45-47.) Once plaintiff was sued by Lyons HR, the McNeils repeated this representation. (*Id.* ¶ 49.) The Frederick Firm was hired to represent plaintiff, and David McNeil signed a contract which obligated Five Points to pay for plaintiff's attorneys' fees associated with the Lyons HR case. (*Id.* ¶¶ 51-52, 106.) Five Points paid for plaintiff's attorneys' fees and expenses until sometime in February 2009. (*Id.* ¶¶ 61, 71.) Plaintiff sustained damages due to defendants' failure to disclose that Five Points would not pay for all of plaintiff's attorneys' fees. (*Id.* ¶¶ 143, 177.) As defendants correctly argue, plaintiff does not allege any facts showing a special or confidential relationship existed between defendants and plaintiff, (doc. 39 at 27), and the particular circumstances plead in the Amended Complaint do not raise a plausible argument that defendants had a duty to disclose whether Five Points would unequivocally pay all of plaintiff's attorneys' fees in connection with the Lyons HR suit. The facts

alleged in the Amended Complaint are unlike the facts in cases where courts have found a duty to disclose based on the particular circumstances.  *See, e.g.*, *Grace*, 916 F. Supp. at 1189-90 (finding suppression claim sufficiently pled based on the particular circumstances, that defendant, an insurance agent, owed plaintiff a duty to disclose to her that the disputed policy duplicated her Medicaid benefits and was thus unnecessary); *Bethel*, 757 So. 2d at 1161-62 (reversing trial court's dismissal of suppression claim and finding that the circumstances, including defendants' repeated representations that they could timely deliver goods under contract, which was "of critical importance," gave rise to a duty to disclose).

Accepting the allegations in the Amended Complaint as true, the court finds the "particular circumstances" arising from plaintiff's allegations are insufficient to state a claim of suppression.  Defendants' Motion will be granted as to Counts VI and X.

## D.   COUNT VII–RETALIATION BASED ON DEFENDANTS' MOTION TO DISQUALIFY

Count VII of the Amended Complaint–"Additional Unlawful Retaliation"[13]–asserts claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 for unlawful retaliation based on defendants' Motion to Disqualify[14] the Frederick Firm in the present litigation.  (Doc. 36 ¶ 146-60.)  As discussed below, the court finds that plaintiff's allegations fail to state a claim of retaliation.   Therefore, defendants' Motion will be granted as to Count VII of the Amended Complaint.

The Eleventh Circuit has held that "[a] plaintiff may establish a prima facie case of retaliation by showing that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) there is some causal relationship between the two events."  *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 337, (11th Cir.) (per curiam) (citation omitted), *cert. denied*, 132 S. Ct. 420 (2011).  These elements are applied in both Title VII and Section 1981 claims.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  Filing an employment discrimination lawsuit constitutes a statutorily protected activity.  *See Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986).  "Regarding an adverse action, a 'plaintiff must show that a

---

[13]Count II of the Amended Complaint, which is not addressed in defendants' Motion, also asserts a retaliation claim.

[14]The facts underlying the Motion to Disqualify are set out briefly *supra* under the court's discussion of Count VIII (additional unlawful interference with business relations).

reasonable employee would have found the challenged action materially adverse.'"
*Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 246 (11th
Cir. 2011) (per curiam) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548
U.S. 53, 68 (2006)).

According to the Amended Complaint, plaintiff's claim of retaliation is based on
plaintiff's "participation in this action."  (Doc. 36 ¶ 149.)  During her last term of
employment with defendants, plaintiff "opposed and complained internally at Five
Points" about the racially discriminatory practices in the workplace.  (*Id.* ¶ 79.)  Plaintiff
initiated this case and undertook a protected action when she filed her first Complaint on
December 17, 2010.  (*Id.* ¶ 101.)  Defendants' Motion to Disqualify was filed on February
18, 2011.  (Doc. 5.)  Plaintiff contends that her act of filing suit "was a substantial
motivating factor for Defendants' additional retaliation against Plaintiff in the form of
trying to deny Plaintiff the counsel of her choice in her pursuit of protection of her
rights."  (Doc. 36 ¶ 156.)  Accepting these facts as true, the court finds as a matter of law
that a reasonable employee would not find this action (the filing of a motion to disqualify
by the defendants) to be "materially adverse" nor would this action (the filing of such a
motion) dissuade a reasonable person from making or supporting a charge of
discrimination.  Therefore, defendants' Motion will be granted as to Count VII of the
Amended Complaint.

**E.  COUNT IX–BREACH OF CONTRACT ARISING OUT OF THE LYONS HR SUIT**

Count IX of the Amended Complaint asserts a claim of breach of contract.  (Doc. 36 ¶¶ 167-73.)  This claim arises out of an Engagement Letter ("the contract") in which defendants, according to the Amended Complaint, "promised and agreed to pay legal fees and expenses associated with The Frederick Firm's representation of Plaintiff in the case Lyons HR had filed against Plaintiff and Five Points."  (*Id.* ¶ 106.)   Defendants argue that plaintiff's breach of contract claim should be dismissed (1) because plaintiff failed to allege damages arising out of the breach, and/or (2) because the contract was at-will and thus could be terminated by either party at any time.  (Doc. 39 at 34-36.)  As discussed below, the court finds that plaintiff states a plausible claim for breach of contract, and thus, defendants' Motion will be denied as to Count IX of the Amended Complaint.[15]

**1.  General Allegation of Damages**

Under Alabama law, general damages do not have to be specifically plead because they are considered to flow naturally and necessarily from the alleged wrongful act.  *See, e.g.*, *Steele v. Underwriters Adjusting Co.*, 649 F. Supp. 1414, 1414 (M.D. Ala. 1986) (discussing Alabama law regarding specificity required in pleading damages); *Crommelin*

---

[15]If as defendants argue in their reply brief plaintiff has not paid any attorneys' fees to the Frederick Firm that she claims should have been paid by Five Points, plaintiff's breach of contract claim will fail for failure to prove damages.  As defendants correctly argue, "damages for emotional distress or other suffering plaintiff might claim are not recoverable" in a breach of contract action.  (Doc. 56 at 34.)

*v. Montgomery Indep. Telecasters, Inc.*, 194 So. 2d 548, 551 (Ala. 1967) ("General

damages do not have to be pleaded in order to give the defendant notice that they will be

proved at the trial, for they are implied by law.")  Thus, a general statement of such

damages is sufficient to prevail in a motion to dismiss.  *See Steele*, 649 F. Supp. at 1414.

Defendant argues that plaintiff has not plead sufficient facts to show that she

suffered damages based on defendants' breach of contract.  However, in the Amended

Complaint, plaintiff states that "Five Points breached its contract to pay, for Plaintiff's

benefit, The Frederick Firm's fees and expenses incurred in its representation of Plaintiff

in the Lyons HR case."  (Doc. 36 ¶ 171.)  Accordingly, plaintiff states that she "was

damaged by Five Points' Breach."  (*Id.* ¶ 172.)  In light of the pleading requirements

regarding general damages that naturally flow from an alleged harm, plaintiff's

allegations establish a plausible basis for her claim.

### 2.  Duration of the Contract

Defendants also argue that because the contract was silent as to its duration, it

should be considered a contract terminable at will, in which case defendants had a right to

terminate the contract whenever they so chose.  (Doc. 39 at 34-35.)[16]  Plaintiff contends

that the contract did, in fact, include a stipulation regarding duration in that the contract

---

[16] A copy of the Engagement Letter is attached as an exhibit to defendants' Memorandum in Support.  (Doc. 39-1.)  The court notes that the Engagement Letter is "outside the pleadings" and will not consider it in ruling on this Motion.

stated that defendants would pay plaintiff's legal fees and expenses incurred during the duration of the Lyons HR lawsuit.  (Doc. 54 at 51-53.)

The Alabama Supreme Court has held that "parties to a contract may either prescribe a fixed term for its duration or make it depend upon some prescribed contingency."  *Phenix City v. Alabama Power Co.*, 195 So. 894, 897 (1940); *see also Flowers v. Flowers*, 334 So. 2d 856, 858 (Ala. 1976) (citing the holding in *Phenix City* with approval).  According to the Amended Complaint, "on behalf of Five Points, David McNeil signed a contract in which Five Points promised and agreed to pay legal fees and expenses associated with The Frederick Firm's representation of Plaintiff in the case Lyons HR had filed against Plaintiff and Five Points."  (Doc. 36 ¶ 106.)  Accepting the alleged facts as true, the court finds this statement implies a "prescribed contingency" upon which duration of the contract–the entirety of the Lyons HR suit–depends, therefore contradicting defendants' argument that the at-will nature of the contract warrants dismissal. Defendants' Motion will be denied as to Count IX.[17]

---

[17]On a Motion for Judgment on the Pleadings the will not consider the Engagement Letter itself and makes no findings as to whether the document is a contract without a fixed term and therefore terminable at will by either party.

## IV.  CONCLUSION

Based on the foregoing, defendants' Motion will be granted as to defendants' Motion for Judgment on the Pleadings as to Counts I, III, IV, V, VI, VII, VIII, and X of plaintiff's Amended Complaint.   Defendants' Motion for Judgment on the Pleadings as to Count IX of the Complaint will be denied.  An Order in conformity with this Opinion will be entered contemporaneously with this Opinion.

**DONE**, this the 28th day of September, 2012.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE